IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

DON BLANKENSHIP

    Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　Civil Action No.:  2:19-cv-00549

DONALD TRUMP, JR.; and
DOES 1-50 inclusive,

    Defendants.

## Notice of Removal

    Now comes Donald Trump, Jr., by counsel, Bowles Rice LLP, ("Defendant"), and pursuant to 28 U.S.C. § 1446 gives notice of the removal of the above-styled action from the Circuit Court of Mingo County to the United States District Court for the Southern District of West Virginia at Charleston.  As grounds for removal Defendant represents as follows:

### I.    Introduction

    Defendant was named in a Complaint filed in the Circuit Court of Mingo County, West Virginia, on or about April 25, 2019, bearing Civil Action No. 19-C-51.  He was served on June 26, 2019.  The Complaint alleges two causes of action against Defendant Trump: "Defamation/Conspiracy to Defame," and "False Light Invasion of Privacy/Conspiracy."  Specifically, Plaintiff alleges that Defendant published false and defamatory statements about him during his campaign for public office in May 2018.  Plaintiff does not assert a specific amount in damages in his Complaint, but states that he was damaged "in an amount to be proven at trial, but which exceeds the jurisdictional minimum of this Court."  *See* Pl.'s Compl. ¶¶ 80, 91.  Plaintiff also demands general damages, special damages, punitive damages, and emotional distress

damages. *See* Pl.'s Compl. 25 ("Demand"). A certified copy of Mingo County Circuit Court docket sheet and a "copy of all process, pleadings, and orders served upon . . . defendant" is attached hereto. 28 U.S.C. § 1446(a); s*ee* Ex. A (Certified Docket Sheet) and Ex. B (Summons and Complaint).

## II. Legal Authority

According to 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court of the United States for the district and division embracing the place where such action is pending." The original jurisdiction of this Court includes "all civil actions where the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs . . . and is between . . . citizens of different States[.]" 28 U.S.C. § 1332(a)(1).

Because Plaintiff has made an unspecified demand for damages in his Complaint, removal is proper if the Court finds "by the preponderance of the evidence, that the amount in controversy exceeds the amount specified in section 1332(a)." 28 U.S.C. § 1446(c)(2)(B). In determining the amount in controversy, the Court may consider,

> [T]he type and extent of the plaintiff's injuries and the possible damages recoverable therefore, including punitive damages if appropriate. The possible damages recoverable may be shown by the amounts awarded in other similar cases. Another factor for the court to consider would be the expenses or losses incurred by the plaintiff up to the date the notice of removal was filed.

*Watterson v. GMRI, Inc.*, 14 F.Supp.2d 844, 850 (S.D. W. Va. 1997) (internal citations omitted) (passage cited as authority for this issue in *Shumate v. DynCorp Int'l LLC*, No. 5:11-CV-00980, slip op. at 9 (S.D. W. Va. Mar. 9, 2012) (2012 WL 830241, at *5) (Berger, J.).

### III. Basis for Removal

A. **There is diversity of citizenship among the parties.**

This is a civil action over which this Court has original jurisdiction under the provisions of 28 U.S.C. § 1332, and may be removed by Defendant pursuant to the provisions of 28 U.S.C. § 1441, because there is complete diversity as to all parties. Under the "Parties" heading of his Complaint, Plaintiff asserts that he "is an individual residing in West Virginia and was in 2018 a candidate for the United States Senate from West Virginia."[1] Pl.'s Compl. ¶ 31. Plaintiff further asserts that Defendant "is an individual residing in the State of New York." *Id.* at ¶ 32. Defendant has also named fifty fictitiously-named "Doe" defendants, but the inclusion of these defendants cannot defeat diversity. Where removal is based on diversity jurisdiction, section 1441 provides "the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1). Thus, Plaintiff and Defendant are "citizens of different states," as required by 28 U.S.C. § 1332(a)(1).

B. **The matter in controversy exceeds $75,000.**

Although Plaintiff has not specified a specific dollar amount in damages, the allegations in his Complaint and the alleged resulting damages are valued well over the $75,000 jurisdictional amount for at least three reasons.[2]

---

[1] For the purposes of removal, Defendant credits Plaintiff's statement that he is a resident of West Virginia. However, Defendant reserves the right to challenge this declaration of residency later in the proceedings. Indeed, this Court recently noted in its order denying Plaintiff's motion to remand in another case that Plaintiff "does not contest [the defendant's] representation that he [Blankenship] is a Nevada domiciliary, nor that complete diversity exists." *Blankenship v. Hon. Andrew Napolitano, et al.*, Mem. Op. & Order, Civ. No. 2:19-cv-00236 (S.D. W. Va. Jul. 17, 2019) (Copenhaver, J.). Regardless of whether Plaintiff is a citizen of West Virginia or Nevada, there is complete diversity among the parties.

[2] In arguing that Plaintiff's claims, if successful, would result in damages greater than $75,000, Defendant in no way concedes that Plaintiff's allegations and claims are meritorious, legitimate, or credible, and Defendant reserves his argument to the contrary for future pleadings.

First, Plaintiff asserts in his Complaint that he "has suffered *enormous* damages" as a result of the conduct alleged, and that he "seeks *substantial* punitive damages." Pl.'s Compl. ¶¶ 25, 26 (emphasis added). In paragraph 25 of the Complaint, Plaintiff boasts his "proven record" of increasing the value of business enterprises exponentially. *Id.* at ¶ 25. He alleges that the defamation described in the Complaint "has so smeared his reputation that he has been prevented from pursuing other businesses and opportunities and generating similar returns of *billions of dollars*." *Id.* (emphasis added). By Plaintiff's own admissions in his Complaint, his damages are enormous, substantial, and worth billions of dollars.

Second, plaintiffs in successful defamation cases with similar and even less significant losses in West Virginia have been awarded far greater than $75,000 by juries. In 1975, the Supreme Court of Appeals of West Virginia upheld the jury's verdict against the Charleston Daily Mail for injuries to the plaintiff. *See Sprouse v. Clay Commc'n, Inc.*, 158 W. Va. 427, 211 S.E.2d 674 (1975) (Neely, J.). In that case, Jim Sprouse was running for governor of West Virginia in 1968 against Arch Moore, a member of the United States House of Representatives at the time. *Id*. at 430. About two weeks prior to the election, the Charleston Daily Mail published several articles about real estate transactions in which Mr. Sprouse was involved. *Id*. The content of the articles was mostly accurate, describing Mr. Sprouse's connection to a New York corporation with profitable land deals in Pendleton County, West Virginia. *Id*. at 434. However, the headlines of the articles were found to be misleading and defamatory, making statements like "Pendleton Realty Bonanza by Jim Sprouse Disclosed," "Moore Asks Federal Probe in Sprouse's Land Grab," and "Where Governor Candidate 'Cleans Up.'" *Id*. at 438-41. There was no evidence that anyone at the Daily Mail believed Mr. Sprouse's transactions were suspect, but the jury found—and the Court of Appeals affirmed—that "the Mail went beyond drawing conclusions from observed facts

and knowingly used the pretext of a legitimate business transaction to lead the electorate to what it . . . *knew* to be a false conclusion." *Id*. at 440, 448-49 (emphasis in original).

The jury awarded Mr. Sprouse $250,000 in actual damages and $500,000 in punitive damages. *Id.* at 453. While the court reversed the award of punitive damages, it upheld the $250,000 in actual damages.[3] *Id.* at 454. The Court specifically stated,

> In light of the amount of jury awards for pain and suffering which are routinely sustained by appellate courts in tort actions involving physical injury, and considering the rank and station in life of the plaintiff at the time of publication, this Court finds that the award of $250,000 actual damages was not excessive.

*Id.* at 454-55.

In *Sprouse*, a candidate for political office proved that a newspaper published defamatory statements about him prior to the election and was awarded $250,000 in damages. Presumably, his damages included his loss, or at least a contribution to his loss of the gubernatorial election. This was in 1975, and a similar damage award today would be much higher as adjusted for inflation. Based on *Sprouse*, and other awards in successful defamation cases, it is more likely than not that a similar defamation claim of an unsuccessful candidate for political office would see an award of over $75,000 if successful at trial. *See also Weddington v. Ford Motor Credit Co.*, 59 F.Supp.2d 578, 584 (S.D. W. Va. 1999) (denying motion to remand and finding mental anxiety and suffering damages to be worth an excess of $75,000 where plaintiff's credit report had been "mistakenly tarnished"); *Estep v. Brewer*, 192 W. Va. 511, 515-16, 453 S.E.2d 345, 349-50 (1994) (upholding award of $250,000 in damages in defamation case where plaintiff was a public person).

---

[3] In reversing the punitive damages award, the Court noted that punitive damages in a defamation case involving a candidate for public office are not barred, just excessive in this case. 158 W.Va. at 453.

Finally, Plaintiff asserts in his Complaint that Defendant's conduct was designed to defeat Plaintiff's candidacy and Senate campaign, which he indeed lost. *See, e.g.*, Pl.'s Compl. ¶¶ 18, 22, 23, 62, 67. If Plaintiff had been successful in his Senate campaign, he would have been collecting the salary of a United States Senator, which is currently reported to be $174,000 per year.[4] Pro-rated at the time of this removal, had he won the nomination and then the election, Plaintiff would have been entitled to about $100,000—greater than the $75,000 jurisdictional limit.

Considering Plaintiff's admissions in his Complaint, the nature of his alleged injuries, the potential for actual and punitive damages, the amounts awarded in similar cases, and his potential lost earnings, Plaintiff's possible damages far surpass the $75,000 limit required for diversity jurisdiction.

**C.     Removal is timely.**

This Notice of Removal is timely filed under 28 U.S.C. §1446(b), because no more than thirty (30) days have passed since Defendant was served with the Complaint.

### IV.     Conclusion

For the reasons stated above, and pursuant to 28 U.S.C. § 1446, Defendant gives notice of the removal of the above-styled action from the Circuit Court of Mingo County to the United States District Court for the Southern District of West Virginia at Charleston. As required under 28 U.S.C. § 1446(d), Defendant is providing this Notice to Plaintiff as set forth in the accompanying Certificate of Service and filing a copy of this Notice with the clerk of the Circuit Court of Mingo County.

---

[4] *See* United States Senate, "Senate Salaries since 1789," https://www.senate.gov/artandhistory/history/common/briefing/senate_salaries.htm (last visited July 24, 2019).

DONALD TRUMP, JR.,

By Counsel,

*/s/ J. Mark Adkins*
J. Mark Adkins (WVSB # 7414)
Richard R. Heath, Jr. (WVSB # 9067)
BOWLES RICE LLP
600 Quarrier Street (25301)
Charleston, West Virginia 25325-1386
Telephone: (304) 347-1100
Facsimile: (304) 347-1756
Email: madkins@bowlesrice.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

DON BLANKENSHIP

    Plaintiff,

v.                                             Civil Action No.: _____

DONALD TRUMP, JR.; and
DOES 1-50 inclusive,

    Defendants.

## Certificate of Service

    I, J. Mark Adkins, do hereby certify that on this 26th day of July 2019, the foregoing *Notice of Removal* was served via the Court's ECF system and by United States mail to all counsel of record.

Jeffrey S. Simpkins, Esquire
SIMPKINS LAW
102 E. 2nd Avenue
Williamson, West Virginia 25661
*Counsel for Plaintiff*

                            */s/ J. Mark Adkins*
                            J. Mark Adkins (WVSB# 7414)