IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

DON BLANKENSHIP

      Plaintiff,

v.

                                            Civil Action No.:  2:19-cv-00549
                                            Judge:  John T. Copenhaver, Jr.

DONALD TRUMP, JR.; and
DOES 1-50 inclusive,

      Defendants.

# Defendant, Donald Trump, Jr.'s Reply to Plaintiff's Response to the Motion to Dismiss

      Plaintiff's Response fails to cure the deficiencies of his Complaint.  At the outset, Plaintiff repeats his narrative of his candidacy inspiring political leaders and media personalities to unlawfully plot his defeat.  However, Plaintiff's story is not supported by the *facts* alleged in his Complaint, nor is it relevant to the disposition of the case at hand.  This case is not about whether there was a conspiracy to defeat Plaintiff's U.S. Senate campaign, or about the "weaponizing" of defamation against him.  It is about whether or not Plaintiff has an actionable claim against the Defendant for a single tweet that was not directed or focused toward Plaintiff and did not impugn his character.  For the reasons originally set forth in Defendant's Motion to Dismiss, and for those further set forth additionally herein, it is clear that Plaintiff has not made such a case.   At the end of the day, Plaintiff cannot forge an actionable claim out of his political loss.

A.    **Plaintiff has failed to adequately plead the elements of defamation and false light invasion of privacy.**

The Complaint has failed to adequately plead the elements of defamation (and false light invasion of privacy), particularly the element of "actual malice"—that Defendant knew his statement was false or published it in reckless disregard of the truth. *See Sprouse v. Clay Commc'n, Inc.*, syl. pt. 1, 158 W.Va. 427, 427, 211 S.E.2d 674, 679 (1975).

To satisfy the pleading standard for "actual malice" required for defamation (and false light invasion of privacy), there must be "more than a sheer possibility" that Defendant acted unlawfully—that he knew the statement was false or that he made the statement with a reckless disregard of the truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Sprouse*, syl. pt. 1, 158 W.Va. at 427. The United States Supreme Court has explained, "the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citations omitted). The Plaintiff has failed to meet this standard, as his Complaint and subsequent response contains nothing more than "unadorned" accusations that he was harmed by the Defendant.

As Plaintiff puts it in his response, his Complaint alleges that Defendant made defamatory statements about Plaintiff "in concert with others in an attempt to deny Mr. Blankenship the nomination." Pl.'s Resp. 2. He goes on to repeat the allegations of the Complaint that he believes support this contention. Distilled to their nub, these allegations assert and reassert the following claims:

- Defendant attended and spoke at a meeting of National Republican Senatorial Committee (NRSC) leaders on May 3, 2018.

2

- After that meeting, Defendant implored voters in a tweet to reject Plaintiff's candidacy. The same night Defendant stated in a reply to a comment to his earlier tweet, "He's probably never run against a felon."

- Defendant did not change or remove this reply tweet.

Plaintiff then repeats the conclusory allegation that is at the heart of his Complaint:

- Therefore, Defendant must have entered into a scheme with the leaders at the NRSC, not just to *defeat* Plaintiff, but to defame Plaintiff by calling him a felon.

This allegation is the very definition of conclusory, i.e., "a factual inference without stating the underlying facts on which the inference is based." Black's Law Dictionary (11th ed. 2019).

The divide between Defendant's participation in a meeting of NRSC leaders and his entering a scheme to call Plaintiff a felon is bridged by the unsupported narrative set forth in his Complaint and again in his Response. Plaintiff's allegation that Defendant's statement was part of a plot or a scheme with others is a "bare assertion of conspiracy [that] will not suffice" for satisfying pleading standards. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The Court should decline to accept Plaintiff's conclusory allegations as true, and instead "consider the factual allegations in [Plaintiff's] complaint to determine if they plausibly suggest an entitlement to relief." *Iqbal*, 556 U.S. at 681 (conclusory allegations are "not entitled to be assumed true").

After sweeping aside Plaintiff's conclusory allegations and unwarranted conspiracy inferences, the remaining factual allegations to be considered are rather scant. The Plaintiff has pled that Defendant attended a meeting with NRSC leaders.[1] Later that evening, Defendant tweeted at his followers to not vote for Plaintiff, and then in a subsequent reply to a comment about Senator Manchin's campaign stated, "He's probably never run against a felon."

---

[1] Notably, Plaintiff's complaint provides little to no details beyond the fact that the NRSC meetings took place, and that the Defendant was a keynote speaker at those meetings.

Taken in a light most favorable to the Plaintiff, it is plausible that the subject of the Senate primary election, which was less than a week away, came up among attendees of the NRSC meeting on May 3, 2018.  And it is certainly plausible that discussions took place regarding the candidates involved in that race.  It is even plausible that Defendant was moved, based on his attendance at the meeting, to tweet to his followers his opposition to Plaintiff's candidacy. However, the inference that Defendant knew that his statement that "He's probably never run against a felon[,]" was false, based on those facts alone, is not plausible.  As pled in his Complaint, Plaintiff has alleged no plausible connection between Defendant attending the meeting and Defendant knowingly defaming a candidate for office.[2]

The only other allegation in the Complaint that suggests Defendant knew his statement was false at the time of its publication is contained within Paragraph 76, which states that "Anyone who consulted the freely available public records of Mr. Blankenship's trial and conviction . . . would know that Mr. Blankenship was convicted of only a misdemeanor[.]"  But Plaintiff's Complaint fails to include the next logical and necessary step, which would be a plausible allegation that Defendant had, in fact, consulted freely available public records and knew that the statement made against the Plaintiff was false.  Taken as true, without any allegation that Defendant actually consulted public records before stating "He's probably never run against a felon," Plaintiff's Complaint does not fill the gap from "conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007).

---

[2] Plaintiff summarizes his conspiracy theory in his Response by stating that Defendant's statement "was part of a concerted effort to smear Mr. Blankenship, an effort begun in West Virginia by sophisticated and well-organized persons unknown by means of a push poll, carried forward by the eventual nominee Patrick Morrisey's organization, 35th PAC, helped along by the now-executive director of the NRSC (Kevin McLaughlin) on national television, and finally taken up by Defendant."  Pl.'s Resp. 8.  There is a complete void of allegations that connect Defendant to any of this, other than Plaintiff's characterization of Defendant as a "sophisticated political operative."  Pl.'s Resp. 2.

As Plaintiff acknowledges in his Response, "'Determining whether a complaint states a plausible claim for relief' is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Pl.'s Resp. 5 (quoting *Iqbal*, 556 U.S. at 679).  Defendant submits that there is little common sense—in the light of the limited facts alleged in the Complaint—that Defendant joined a scheme to intentionally defame Plaintiff by virtue of his attendance at NRSC meetings as the keynote speaker (Compl. ¶ 62), or that Defendant was knowledgeable of Plaintiff's criminal record based upon the availability of public records (Compl. ¶ 76).

**B.**     **Plaintiff's allegations do not constitute defamation per se.**

Having failed to meet the requisite pleading standard for "actual malice" required for defamation (and false light invasion of privacy), Plaintiff's arguments in response to the motion to dismiss rely on his erroneous conclusion that Plaintiff's statement that "He's probably never run against a felon[,]" is defamation per se.  Pl.'s Resp. 13.  He contends that, because the statement is defamation per se, it is incapable of innocent meaning and his damages are to be presumed.

First, Defendant disputes that the statement is defamation per se.  "At common law, defamation per se includes only imputations of a crime of moral turpitude, imputations of a loathsome disease, imputations of sexual misconduct by a woman, and imputations which affect a business, trade, profession or office."  *Mauck v. City of Martinsburg*, 280 S.E.2d 216, 220, n. 3 (W. Va. 1981).  This definition, citing the Restatement (Second) of Torts §§ 571-74 (1977), has been repeated in West Virginia courts and federal courts employing West Virginia defamation law. *See Richard H. v. Rachel B.*, No. 17-cv-0065, 2018 WL 2277775, at *1 (W. Va. May 18, 2018); *Giles v. Kanawha Cty. Bd. of Educ.*, No. 17-cv-0139, 2018 WL 300605, at *4 (W. Va. Jan. 5, 2018); *Kessler v. First Cmty. Bank*, No. 5:16-cv-06067, 2018 WL 3150354, at *5 (S. D. W. Va.

5

June 26, 2018); *Hallman-Warner v. Bluefield State Coll.*, No. 1:17-cv-02882, 2018 WL 1309748,

at *14 (S. D. W. Va. Jan. 19, 2018); *Kerr v. Marshall Univ. Bd. of Governors*, No. 2:14-cv-12333,

2015 WL 1405540, at *12 (S. D. W. Va. Feb. 4, 2015); *Cruse v. Frabrizio*, No. 3:13-cv-18768,

2014 WL 3045412, at *3 (S. D. W. Va. July 2, 2014).

      The Restatement of Torts relied on in *Mauck* and by this Court most recently in

*Distinguished Executives Transportation, LLC v. Cracker Barrel Old Country Store, Inc.*, No.

2:16-cv-08503, 2018 WL 2171443 (S. D. W. Va. May 10, 2018), further provides,

> One who publishes a slander that imputes to another conduct
> constituting a criminal offense is subject to liability to the other
> without proof of special harm if the offense imputed is of a type
> which, if committed in the place of publication, would be
>
> > (a) punishable by imprisonment in a state or federal
> > institution, or
> >
> > (b) regarded by public opinion as involving moral turpitude.

Restatement (Second) of Torts § 571 (1977).

      Here, the term "felon" does not impute a crime of moral turpitude, which

"contemplates 'inherent baseness or vileness of principle in the human heart,' or 'shameful

wickedness, so extreme a departure from ordinary standards of honesty, good morals, justice or

ethics as to be shocking to the moral sense of the community.'" *Distinguished Executives

Transportation* at *10 (citing Restatement (Second) of Torts § 571, cmt. g. (1977)). Nor does the

statement, "He's probably never run against a felon[,]" constitute defamation per se under the more

expansive definition in the Restatement, as it does not impute to Plaintiff any criminal *conduct* that

was not already imputed to his reputation.

      Plaintiff's reliance on 100-year-old West Virginia cases to support his position that

words imputing upon a person the commission of *any* crime is defamation per se is misplaced in

the current context, as Defendant submits that these cases involved publications imputing upon the plaintiff a specific crime or criminal conduct when that plaintiff had not been convicted of *any crime* or was otherwise an upstanding citizen.   *See Milan v. Long*, 78 W. Va. 102, 88 S.E. 618, 619 (1916) (newspaper published statement that plaintiff had been convicted of perjury when she had been found not guilty); *Sweeney v. Baker*, 13 W. Va. 158, 194 (1878) (newspaper published statement calling plaintiff a "professional gambler, a bully, a thief and a whoremaster"); *Colcord v. Gazette Pub. Co.*, 106 W. Va. 419, 145 S.E. 751, 752 (1928) (newspaper published statement that plaintiff was an accomplice to murder, when he was law-abiding citizen); *Alderson v. Kahle*, 73 W. Va. 690, 80 S.E. 1109, 1110 (1914) (defendant publicly stated that plaintiff was "a Nicholas county cur and thief").  These cases are distinguishable from Plaintiff's claims, where the alleged defamatory statement is vague, indirect, does not mention any particular conduct, was meant to be persuasive and sarcastic, and is alleged only to be inaccurate insofar as it states "felon" as opposed to "misdemeanant."[3] *See Grabow v. King Media Enterprises, Inc.*, 156 Ohio App. 3d 443, 452, 806 N.E.2d 591, 597 (2004) (court determined, albeit on summary judgment, that statement calling mayor "convicted felon" when he was only misdemeanant was not actionable defamation where statement as a whole was not focused on the plaintiff and "was meant to be persuasive and not factual").

Just as he failed to sufficiently plead "actual malice," Plaintiff has not plausibly pled that the statement "He's probably never run against a felon[,]" was defamatory to him and his

---

[3] Plaintiff also cites *Neal v. Huntington Pub. Co.*, 159 W. Va. 556, 560, 223 S.E.2d 792, 795 (1976), to support his argument that use of the term "felon" is defamation per se.  However, the *Neal* Court only resolved the question of whether the defamatory statement published in the newspaper identified the plaintiff and did not opine on any other issues relevant to the sufficiency of the complaint.

reputation.[4]  Plaintiff's Complaint does not address the statement's tendency to defame him and his Response only relies on his argument that the statement is per se defamatory.  While Plaintiff cites a number of cases in which private persons were presumed injured by defamation per se, he fails to address the critical distinguishing element of his claim—Plaintiff is a public figure who has admittedly been convicted of a federal crime.

Ultimately, Plaintiff's claim of defamation is one of degree—he was convicted of a misdemeanor related to his operation of a coal business, and Defendant's statement used the classification "felon."  Nevertheless, his case is distinguishable from most of the defamation cases cited in the Response, which presume that the plaintiff was a reputable citizen and whose reputational status was dropped from law-abiding to criminal as a result of the defamatory statement in question.  That is not the case here.

By his own accord, Plaintiff's Complaint provides a lengthy narrative and timeline detailing his notoriety and disrepute.[5]  He is unquestionably a public figure and admits that not only has he been convicted of a crime, but also that his prosecution arose out of the disaster resulting in the deaths of 29 miners.  *See* Compl. ¶ 8-9 (discussing UBB explosion and Plaintiff's theory of government fault and deflection of blame through Plaintiff's federal prosecution).  The

---

[4] Regardless of Plaintiff's defamation per se claims, Defendant is not aware of any relevant precedent that relieves Plaintiff from his obligation to plead with sufficiency each element of the crime of defamation.  The elements of defamation of a candidate for public office are as follows:

> (1) the alleged libelous statements were false or misleading; (2) the statements tended to defame the plaintiff and reflect shame, contumely, and disgrace upon him; (3) the statements were published with knowledge at the time of publication that they were false or misleading or were published with a reckless and willful disregard of truth; and, (4) the publisher intended to injure the plaintiff through the knowing or reckless publication of the alleged libelous material.

> *Sprouse*, syl. pt. 1, 158 W.Va. at 427.

[5] In fact, Plaintiff embraces his controversial background to tell the story of how he made powerful enemies who sought his ruin, but now hides behind a theory of defamation that attempts to look at the Defendant's statement alone and ignore critical details regarding his reputational status.  He cannot have it both ways.

circumstances surrounding the Plaintiff's conviction and subsequent jail sentence are the backdrop for Defendant's statements calling for the rejection of Plaintiff's U.S. Senate candidacy. Given the details of Plaintiff's background and the criminal history that *he alleges* (fair or unfair) the statement "He's probably never run against a felon[,]" cannot hold up as "tend[ing] to defame the plaintiff and reflect shame, contumely, and disgrace upon him."

The only case Plaintiff cites that supports a defamation claim for reporting a felony instead of a misdemeanor is *Myers v. The Tel.,* 332 Ill. App. 3d 917, 926, 773 N.E.2d 192, 200 (2002). In that case, a newspaper published a front-page story saying that the plaintiff, presumably a private person, had been convicted of felony possession of marijuana and sentenced to probation and fined, when he had really only been convicted of misdemeanor possession and placed on conditional discharge and fined. *Id.* at 196. The newspaper repeated this story days later. *Id.* The Appellate Court of Illinois found it significant that the plaintiff was reported to have pled to a more serious crime than he actually did.

The *Myers* decision is not binding on this Court, nor is it persuasive authority that evaluates West Virginia defamation law. The case also involves significant distinguishing details from the case at hand.[6] First, and perhaps most notably, the plaintiff in question was not a candidate for office, a public official, or otherwise a public figure for purposes of defamation law. Second, the newspaper in question referred directly to the plaintiff by name in making its alleged defamatory statements. Third, the newspaper published multiple specific details about the plaintiff's crime of conviction and punishment.

---

[6] In *Myers,* the plaintiff was the subject of two newspaper stories, including one front-page story, stating that the plaintiff had pled to a felony. The stories also specified the conduct of plaintiff's crime – possession of marijuana. And the stories were published by a newspaper that reported on local crimes, making it far more plausible that the newspaper would consult public records before reporting on public crimes.

In the very different context of Plaintiff's Complaint, Defendant's single use of the term "felon" is far from the injury described in *Myers*. The heart of the crime in *Myers*—marijuana possession—is heightened by the added felony claim. The newspaper essentially reported that plaintiff possessed a felony-quantity of marijuana, rather than the lesser quantity that would amount to a misdemeanor. Here, there is no conduct attached to the term "felon" in Defendant's statement. There is no misstatement about Plaintiff's underlying criminal actions, there is only a vague assertion of a crime committed.[7]

Plaintiff was ultimately convicted of conspiring to violate mine safety laws following the UBB explosion. Those are the facts, regardless of whether Plaintiff's prosecution was justified or part a government scheme. While Plaintiff claims that "Defendant's defamatory statement was made in conjunction with reference to the mine disaster and thus, had the additional effect . . . of further defaming Mr. Blankenship," (Compl. ¶ 62), it is notable that Plaintiff's Complaint does not allege defamation for Defendant's underlying tweet. Taken in full context, the Defendant's statement noted that "the first thing Manchin will do is run ads featuring the families of those 29 miners killed due to actions that sent you to prison." Pl.'s Resp. 6. It bears repeating that the substance, the gist—the *sting*—of Defendant's comments is in the reference to his conviction and sentence and not in the details of the potential length of the punishment of his crime. Plaintiff has failed to sufficiently plead that the statement "He's probably never run against a felon[,]" "tended to defame the plaintiff and reflect shame, contumely and disgrace upon him" any more than Defendant's truthful comments that Plaintiff ran a mine that suffered a deadly disaster and then went to prison.[8]

---

[7] In this case, it is the Plaintiff's undisputed underlying history—and not the misdemeanor or felony label—that caused the reputational harm to his campaign for public office of which he now complains.

[8] Plaintiff states that whether Defendant's statement is substantially true or a reasonable mistake is a jury question. However, Plaintiff has set forth all of the support for these arguments in his Complaint. Defendant does

For these reasons, and the reasons set forth in his Motion to Dismiss, Defendant maintains that Plaintiff's Complaint fails to state a claim upon which relief can be granted and should be dismissed.

DONALD TRUMP, JR.,

By Counsel,

*/s/ J. Mark Adkins*
J. Mark Adkins (WVSB # 7414)
Richard R. Heath, Jr. (WVSB # 9067)
BOWLES RICE LLP
600 Quarrier Street (25301)
Charleston, West Virginia 25325-1386
Telephone: (304) 347-1100
Facsimile: (304) 347-1756
Email: madkins@bowlesrice.com

---

not have to prove that Plaintiff was convicted of a misdemeanor, or that there were public sources of information suggesting Plaintiff was a felon, because Plaintiff admits all of this in the Complaint.  This is less a question of fact for a jury than it is a failure of the Complaint to plead that Defendant's statement tended to defame the Plaintiff.  *See Brewer v. Dungan*, No. 92-CVS-456, 1993 WL 441306, at *1 (N.C. Super. June 30, 1993) (dismissing libel action and finding statement asserting plaintiff had been convicted of felony assault was substantially true where it was "undisputed and appears from the face of plaintiff's complaint" that she pled to the misdemeanor aggravated assault).

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

DON BLANKENSHIP

      Plaintiff,

v.                                             Civil Action No.:  2:19-cv-00549
                                             Judge:  John T. Copenhaver, Jr.

DONALD TRUMP, JR.; and
DOES 1-50 inclusive,

      Defendants.

# Certificate of Service

      I, J. Mark Adkins, do hereby certify that on this 23rd day of August 2019, the

foregoing ***Defendant, Donald Trump, Jr.'s Reply to Plaintiff's Response to the Motion to***

***Dismiss*** was served via the Court's ECF system to all counsel of record.

Jeffrey S. Simpkins, Esquire
SIMPKINS LAW
102 E. 2nd Avenue
Williamson, West Virginia 25661
Counsel for Plaintiff

Jeremy Gray, Esquire
Zachary Austin Gidding, Esquire
EARLY SULLIVAN WRIGHT GIZER & MCRAE
17th Floor
6420 Wilshire Boulevard
Los Angeles, CA 94105
Counsel for Plaintiff

*/s/ J. Mark Adkins*
J. Mark Adkins (WVSB# 7414)