UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

DON BLANKENSHIP,

       Plaintiff,

v.                           Civil Action No. 2:19-cv-00549

DONALD TRUMP, JR. and
DOES 1-50 INCLUSIVE,

       Defendants.

MEMORANDUM OPINION AND ORDER

       Pending is the defendant's motion to dismiss, filed on August 2, 2019.

I.    Factual Background

       The plaintiff, Don Blankenship, initiated this action on or about April 25, 2019 in the Circuit Court of Mingo County, West Virginia, against the defendant, Donald Trump, Jr. ("Trump, Jr."), for claims of defamation, false light invasion of privacy, and conspiracy to commit defamation and false light invasion of privacy.[1]  See Notice of Removal, ECF No. 1.  The

---

[1] The plaintiff also lists Does 1-50 as defendants, who are "other persons currently unknown to Plaintiff" who shared a common plan with defendant Trump to defeat the plaintiff in the 2018 Republican primary election in West Virginia for the United States Senate seat.  See Compl., ECF No 1-2 ¶¶ 78, 89-90.

action was removed to this court pursuant to 28 U.S.C. § 1441
based on the original jurisdiction of this court under 28 U.S.C.
§ 1332(a)(1).[2]  Id.

        Following an explosion in a West Virginia mine on
April 5, 2010, that resulted in the death of twenty-nine (29)
miners, the United States government initiated an investigation
into the cause of the explosion.  See Compl., ECF No. 1-2
("Compl.") ¶¶ 36-38.  While the plaintiff was not charged with
the death of the miners or with causing the explosion, the
government later charged the plaintiff with three felonies,
including conspiracy to defraud the federal Mine Safety and
Health Administration, and one misdemeanor for conspiracy to
violate federal mine safety laws.  See id. ¶ 41.  On December 3,
2015, a federal jury found the plaintiff not guilty of the
felony charges but convicted him of the misdemeanor offense.
Id. ¶ 43.  The plaintiff was sentenced to one year in prison,
which the plaintiff served and from which he was released in the
spring of 2017.  Id. ¶¶ 44-45.

_____

[2] The plaintiff has filed three other actions alleging similar
claims against other defendants.  See Blankenship v. Bos. Globe
Media Partners, No. 2:19-cv-00589 (S.D.W. Va.); Blankenship v.
Fox News Network LLC, No. 2:19-cv-00236 (S.D.W. Va.);
Blankenship v. NBCUniversal LLC, No. 2:20-cv-00278 (S.D.W. Va.).

In January 2018, the plaintiff announced his campaign to run as a Republican for a United States Senate seat in West Virginia.  Id. ¶ 46.  The Republican primary election was scheduled for May 8, 2018.  Id.  The plaintiff alleges that political and news media figures conspired to defeat his candidacy by referring to the plaintiff as a "felon" or a "convicted felon," despite the fact that the plaintiff was cleared of the felony charges and was only convicted of the misdemeanor offense.  See id. ¶¶ 3-4, 17-24, 49-54, 62-67.  One of these figures was Trump, Jr.

On May 3, 2018, after allegedly attending a meeting with members of the National Republican Senatorial Committee ("NRSC"), Trump, Jr. published a series of tweets about the plaintiff from his Twitter handle @DonaldTrumpJr.  See id. ¶¶ 57-59.

The first tweet on May 3, 2018 reads:

> I hate to lose.  So I'm gonna go out on a limb here
> and ask the people of West Virginia to make a wise
> decision and reject Blankenship!  No more fumbles like
> Alabama.  We need to win in November.  #wv  #wvpol

See id. ¶ 57.  In response, the plaintiff issued a press release that afternoon in which he promoted his candidacy.  See id. ¶ 58

Trump, Jr. posted a second tweet ("quote tweet" [3]) later on May 3, 2018 in response to a tweet from CNN reporter Dan Merica's Twitter handle @merica.  See id. ¶ 59.  Merica's tweet, also from May 3, 2018, reads:

> Trump's son urges West Virginia Republicans to reject
> Blankenship, who responds by labeling @DonaldJTrumpJr
> part of the "establishment."

Id.  Merica's tweet includes a link to his CNN news article about Trump, Jr.'s earlier tweet urging West Virginia Republicans to "reject Blankenship."  See id.  The first part of the article reads:

> President Donald Trump's son Donald Trump Jr. urged
> West Virginia Republicans on Thursday to reject Don
> Blankenship in next week's primary, comparing the coal
> baron to failed Alabama Senate candidate Roy Moore.
>
> "I hate to lose.  So I'm gonna go out on a limb here
> and ask the people of West Virginia to make a wise
> decision and reject Blankenship! No more fumbles like
> Alabama," he wrote on Twitter.  "We need to win in
> November."

---

[3] A "quote tweet" -- or a "retweet with comment" -- is a tweet in which the user retweets another person's tweet on the user's profile along with the user's own comments.

4

> The comment from the President's son is the clearest
> signal yet that national Republicans are worried that
> Blankenship's upstart campaign could upend plans to
> run either Republican Rep. Evan Jenkins or Attorney
> General Patrick Morrisey against vulnerable Democratic
> Sen. Joe Manchin in November.[4] National Republicans
> were worried when Blankenship jumped into the race,
> given that the former CEO of Massey Energy had just
> recently finished serving a yearlong sentence
> following a misdemeanor conviction for his involvement
> in the deadliest US mine explosion in four decades.
> . . . .

Dan Merica, Trump's Son Urges West Virginia Republicans to

Reject Blankenship, CNN, May 3, 2018,

https://www.cnn.com/2018/05/03/politics/trump-jr-don-

blankenship.

Trump, Jr.'s quote tweet includes his own comments,

the tweet from Dan Merica, and the link to the CNN news article.

See Compl. ¶ 59.  Trump, Jr.'s quote tweet comment includes:

> Ha, now I'm establishment?  No, I'm realistic & I know
> the first thing Manchin will do is run ads featuring
> the families of those 29 miners killed due to actions
> that sent you to prison.  Can't win the general... you
> should know that & if others in the GOP won't say it,
> I will.

Id. ¶ 59.

Another Twitter user replied to Trump, Jr.'s tweet:

"Don't think Manchin will do that.  His ads are usually ab[ou]t

---

[4] Senator Joe Manchin was the incumbent United States Senator
from West Virginia whose seat was up for election in 2018.

him."[5]  Id.  Trump, Jr. replied to this with a third tweet ("reply tweet"), which reads:

He's probably never run against a felon.

Id.  The plaintiff argues that Trump, Jr.'s reply tweet refers to him as a felon and is materially false because he has never been convicted of a felony.  See id. ¶¶ 60, 69.  The plaintiff also alleges that the reply tweet was made in conjunction with reference to the mine explosion from the quote tweet, which had the additional effect of falsely attributing to the plaintiff responsibility for murder.  See id. ¶ 23, 74.

The plaintiff alleges that Trump, Jr. published the false and defamatory statements on Twitter "at the request of the NRSC and others as part of their efforts to smear Mr. Blankenship and defeat his candidacy."[6]  Id. ¶ 62.  The plaintiff also alleges that Trump, Jr. never issued a correction or retraction about the tweets, nor has he removed the tweets from

---

[5] A reply to a tweet appears embedded below the original tweet as part of a conversation string.  Users can also reply to replies, since each reply is itself a tweet.

[6] The plaintiff also alleges that a "push poll" was conducted on or about March 25, 2018 by unknown persons wherein phone operators called potential voters in West Virginia to ask the voters questions predicated on the idea that the plaintiff was a felon.  See Compl. ¶ 50.  The plaintiff argues that this "push poll" was intended to defame him and to derail his campaign by planting the false idea in the minds of voters that the plaintiff was a felon and/or convicted of a felony.  Id.  The court understands this allegation to be against the Does 1-50.

public view.  See id. ¶ 61.  The plaintiff lost his bid for the Republican party nomination in the primary election on May 8, 2018.  Id. ¶ 66.  The plaintiff asserts that Trump, Jr.'s defamatory statements on Twitter caused him "enormous damages" by injuring his reputation, preventing him from pursuing other businesses and economic opportunities, and being a material cause of his loss in the primary election.  Id. ¶¶ 25, 66.  The plaintiff filed this suit asserting four causes of action, though the complaint lists them in two counts.  See id. ¶¶ 68, 91.  In all, the plaintiff asserts causes of action for (1) defamation, (2) conspiracy to defame, (3) false light invasion of privacy, and (4) conspiracy to commit false light invasion of privacy.  See id.

On August 2, 2019, Trump, Jr. filed a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state claim upon which relief can be granted.  See Def.'s Mot. Dismiss, ECF No. 3.  The plaintiff filed a response in opposition on August 16, 2019, see Pl.'s Resp., ECF No. 11 ("Pl.s' Resp."), to which Trump, Jr. filed a reply on August 23, 2019, see Def.'s Reply, ECF No. 12 ("Def.'s Reply").

7

## II.  Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleader provide "a short and plain statement of the claim showing . . . entitle[ment] to relief."  Fed. R. Civ. P. 8(a)(2); <u>Erickson v. Pardus</u>, 127 S. Ct. 2197, 2200 (2007).  The required "short and plain statement" must provide "'fair notice of what the . . . claim is and the grounds upon which it rests.'"  <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 545 (2007) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957), <u>overruled on other grounds</u>, <u>Twombly</u>, 550 U.S. at 563).

Rule 12(b)(6) correspondingly permits a defendant to challenge a complaint that "fail[s] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  In order to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[7]  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 570).  The "[f]actual allegations [in the complaint] must be enough to raise a right to relief above the speculative level" such that relief is "plausible."  <u>Twombly</u>, 550 U.S. at 555-56.  A

---

[7] "[T]he usual standards of notice pleading apply in defamation cases."  <u>Hatfill v. N.Y. Times Co.</u>, 416 F.3d 320, 329 (4th Cir. 2005).

"formulaic recitation of the elements of a cause of action will not do." Id. at 555.

"A motion to dismiss tests the sufficiency of a complaint." Occupy Columbia v. Haley, 738 F.3d 107, 116 (4th Cir. 2013). The court's evaluation is therefore "generally limited to a review of the allegations of the complaint itself. However, [the court] also consider[s] documents that are explicitly incorporated into the complaint by reference . . . ." Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016) (citing Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)). Application of the Rule 12(b)(6) standard requires that the court "'accept as true all of the factual allegations contained in the complaint.'" Erickson, 551 U.S. at 94 (quoting Twombly, 550 U.S. at 555-56).


## III. Analysis

Federal courts exercising jurisdiction through diversity of citizenship must apply state substantive law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); see also Stonehocker v. Gen. Motors Corp., 587 F.2d 151, 154 (4th Cir. 1978) ("[F]ederal courts are to apply the substantive law the State in which they are sitting would apply if the case had originated in a State court."). Removal in this case was based

on diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1).[8]
This court must therefore consider relevant case law from the
Supreme Court of Appeals of West Virginia.

A.    Defamation

Defamation is "[a] false written or oral statement
that damages another's reputation." Pritt v. Republican Nat.
Comm., 557 S.E.2d 853, 861 n.12 (W. Va. 2001) (quoting Black's
Law Dictionary 427 (7th ed. 1999)). Defamation published in
written form constitutes libel. Syl. Pt. 8, Greenfield v.
Schmidt Baking Co., 485 S.E.2d 391, 394 (W. Va. 1997). West
Virginia law identifies three types of plaintiffs in defamation
cases: (1) public officials and candidates for public office,
(2) public figures, and (3) private individuals. Syl. Pt. 10,
Hinerman v. Daily Gazette Co., 423 S.E.2d 560, 564 (W. Va.
1992). It is undisputed at this stage that the plaintiff
qualifies as a candidate for public office.

---

[8] Diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1)
requires (1) an amount in controversy that exceeds $75,000,
exclusive of interests, and (2) that the parties be citizens of
different States. Although the plaintiff does not specify an
amount for his damages, Trump, Jr. asserts that the possible
damages surpass the $75,000 limit required for diversity
jurisdiction. See Notice of Removal, ECF No. 1 at 3-6.

10

In order to recover in a libel action, plaintiffs who qualify as candidates for public office must prove elements by clear and convincing evidence that

> (1) there was the publication of a defamatory statement of fact or a statement in the form of an opinion that implied the allegation of undisclosed defamatory facts as the basis for the opinion; (2) the stated or implied facts were false; and, (3) the person who uttered the defamatory statement either knew the statement was false or knew that he was publishing the statement in reckless disregard of whether the statement was false.

Syl. Pt. 1, Hinerman, 423 S.E.2d at 563 (emphasis omitted). Further, to sustain a libel action, a plaintiff who qualifies as a candidate for public office must also prove that "the publisher intended to injure the plaintiff through the knowing or reckless publication of the alleged libelous material."  Syl. Pt. 4, Chafin v. Gibson, 578 S.E.2d 361, 363 (W. Va. 2003) (per curiam) (quoting Syl. Pt. 1, Sprouse v. Clay Commc'n Inc., 211 S.E.2d 674, 679 (1975)); accord Syl. Pt. 6, Pritt, 557 S.E.2d at 855.

In his motion to dismiss, Trump, Jr. argues that the plaintiff has failed to state a claim for defamation for four reasons: (1) the plaintiff has not sufficiently pled actual malice, (2) the plaintiff has failed to plead that the statement in question was defamatory, (3) the plaintiff has not plausibly pleaded that the statement caused him injury or tended to lower

his standing in the community, and (4) the statement cannot be the basis for a defamation claim because it is substantially accurate or a reasonable mistake.  Mem. Supp. Mot. Dismiss, ECF No. 4 ("Mem. Mot. Dismiss") at 6-7.

### (1)  *Actual Malice*

To prevail in a defamation claim, plaintiffs who are public officials must prove by clear and convincing evidence that the defendant made the defamatory statement with "actual malice" -- that is, "with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times Co. v. Sullivan, 376 U.S. 254, 280 (1964); Syl. Pt. 2, State ex rel. Suriano v. Gaughan, 480 S.E.2d 548, 551 (W. Va. 1996); see also Carr v. Forbes, Inc., 259 F.3d 273, 282 (4th Cir. 2001) ("Establishing actual malice is no easy task, because the defamation plaintiff bears the burden of proof by clear and convincing evidence."); Syl. Pt. 12, Pritt, 557 S.E.2d at 856 ("In order for a public official or a candidate for public office to recover in a libel action, he/she must prove by clear and convincing evidence that the stated or implied facts were false.").

"Actual malice is a subjective standard." Reuber v. Food Chem. News, Inc., 925 F.2d 703, 714 (4th Cir. 1991) (en

banc).  The Supreme Court of Appeals of West Virginia has also
recognized that:

> The greatest obstacle that a public official libel
> plaintiff must overcome is the First Amendment
> requirement that the publisher of a libel against a
> public official have a subjective appreciation at the
> time of publication that either (1) the defamatory
> statement is false or (2) the defamatory statement is
> being published in reckless disregard of whether it is
> false.

Hinerman, 423 S.E.2d at 572 (emphasis in original).  Actual
malice may be proven by circumstantial evidence.  See Harte-
Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 668 (1989).
"[P]artisanship, animus toward the subject of a libel, or other
'malicious' motives" are not conclusive evidence of "actual
malice" on their own, but a jury may consider them in
determining "whether a subjective realization that the statement
was false or a subjective realization that the statement was
being published recklessly, existed at the time the statement
was published."  Hinerman, 423 S.E.2d at 573.

   To show reckless disregard for truth or falsity, and
therefore actual malice, "a plaintiff must prove that 'the
defendant in fact entertained serious doubts as to the truth of
his publication.'"  Fairfax v. CBS Corp., 2 F.4th 286, 293 (4th
Cir. 2021) (quoting St. Amant v. Thompson, 390 U.S. 727, 731
(1968)).  "To plead actual malice, therefore, [a plaintiff] must
plausibly allege that [the defendant] [published] the [material]

with a 'high degree of awareness'" that it was "likely" false. Id. (quoting Garrison v. Louisiana, 379 U.S. 64, 74 (1964)). Recklessness may be found where there are obvious reasons to doubt the veracity or accuracy of information.  See St. Amant, 390 U.S. at 732.

Trump, Jr. argues that the plaintiff has failed to state a claim for defamation because the plaintiff has not sufficiently pled actual malice and because the plaintiff only states conclusory allegations that are mere recitations of the legal standard.[9]  Mem. Mot. Dismiss at 8-9.  Trump, Jr. alleges that his quote tweet conveyed an opinion and was directed toward his Twitter followers, not toward the plaintiff.[10]  See id. at 10-11.  Trump, Jr. also alleges that the reply tweet with the allegedly defamatory statement does not identify the plaintiff and instead was a reply directed at the single Twitter user to whom he was replying.  See id. at 10.  Finally, Trump, Jr. argues that the reference to "felon" in his reply tweet was not the focus of the tweet, and that the reference was incidental to

---

[9] Trump, Jr. also argues that, to the extent that the plaintiff alleges that the tweets were part of a plan or scheme with others to injure the plaintiff, the allegations are likewise conclusory and do not support a showing of actual malice.  See Mem. Mot. Dismiss at 9.

[10] Trump, Jr. refers to the "original message," which the court understands to be the quote tweet.  See Mem. Mot Dismiss at 10.

the core of the comment about the probable nature of attack ads. See id.

Trump, Jr. concedes that he posted earlier on May 3, 2018 about the plaintiff's criminal history and association with the mine explosion. See id. However, Trump, Jr. argues that the plaintiff has not plausibly alleged that Trump, Jr. knew, or recklessly avoided knowing, that the plaintiff's crime of conviction was a misdemeanor rather than a felony. See id. at 10-11. Trump, Jr. further alleges that he had a "reasonable assumption" that the plaintiff was a felon based on broadcast news that had identified the plaintiff as a felon before Trump, Jr. posted his tweets. See id. at 11.

The plaintiff argues in opposition that the circumstances alleged create more than a sufficiently plausible inference that Trump, Jr. acted with actual malice. See Pl.'s Resp. at 8. The plaintiff alleges that Trump, Jr.'s malice goes beyond partisan disdain and was part of a "professional political 'hit job.'" See id. In particular, the plaintiff alleges facts in support of the inference that Trump, Jr. issued the tweet with knowledge of its falsity: (1) Trump, Jr. was involved in high-level discussions about the primary campaign in West Virginia, (2) he made the statements shortly after one such meeting, (3) the comments were made as part of a string of false

comments by sophisticated party operatives, (4) the true facts were widely available on the internet and had been widely reported, and (5) he never retracted or corrected the false tweets, despite being informed of their falsity.  See id. at 10.  According to the plaintiff, these circumstances taken together demonstrate Trump, Jr.'s actual malice.  See id.

  The plaintiff's allegations are sufficient at this stage to create a "plausible inference" that Trump, Jr. published his tweet with knowledge of its falsity.  In his quote tweet, Trump, Jr. concedes knowledge of the plaintiff's criminal history and association with the mine explosion.  See Compl. ¶ 59; Mem. Mot. Dismiss at 10.  The CNN news article linked in the quote tweet reports that the plaintiff "had just recently finished serving a yearlong sentence following a misdemeanor conviction for his involvement in the deadliest US mine explosion in four decades."  See Dan Merica, Trump's Son Urges West Virginia Republicans to Reject Blankenship, CNN, May 3, 2018, https://www.cnn.com/2018/05/03/politics/trump-jr-don-blankenship (emphasis added).  Based on this article that Trump, Jr. himself cites within his own quote tweet, there is a plausible inference that he had knowledge of the plaintiff's conviction history in association with the mine explosion, and

16

in particular that the conviction was a misdemeanor, not a felony.

Alternatively, the CNN article supports a plausible allegation of reckless disregard for the truth.  Trump, Jr. alleges that he had a "reasonable assumption" that the plaintiff was a felon based on numerous news sources that mention the mine explosion and identify the plaintiff as a felon.  See Mem. Mot. Dismiss at 11; see also Compl. ¶¶ 15-17.  Trump, Jr. would not have reason to doubt the accuracy of these sources on their own.  Cf. CACI Premier Tech., Inc. v. Rhodes, 536 F.3d 280, 295-304 (4th Cir. 2008) (finding no reckless disregard for the truth where a radio host relied on several reliable sources, government-commissioned reports, and a published interview by another organization).  However, he would have reason to entertain serious doubt about the falsity of his statement based on the CNN article, which unequivocally reports that the plaintiff's conviction in connection with the mine explosion was for a misdemeanor.

### (2)  *Defamatory Statement*

Defamatory statements tend to defame a plaintiff and "reflect shame, contumely, and disgrace" upon him.  See Syl. Pt. 1, Sprouse v. Clay Commc'n, Inc., 211 S.E.2d 674, 679 (W. Va.

1975).  A statement may be described as defamatory "if it tends
so to harm the reputation of another as to lower him in the
estimation of the community or to deter third persons from
associating or dealing with him."  Crump, 320 S.E.2d at 77
(citing Restatement (Second) of Torts § 559 (1977)).  Defamation
may be accomplished directly through direct reference, or
indirectly through inference, implication, innuendo, or
insinuation.  See id.

        "A court must decide initially whether as a matter of
law the challenged statements in a defamation action are capable
of a defamatory meaning."  Syl. Pt. 6, Long v. Egnor, 346 S.E.2d
778, 780 (W. Va. 1986).  In making this assessment, the court
must decide whether the allegedly defamatory statement could be
construed as a statement of fact or opinion.  Pritt, 557 S.E.2d
at 861; Syl. Pt. 7, Long, 346 S.E.2d at 780.  A statement of
opinion that does not contain a "provably false assertion of
fact" is entitled to full constitutional protection.  Syl. Pt.
4, Maynard v. Daily Gazette Co., 447 S.E.2d 293, 294 (W. Va.
1994); see also Syl. Pt. 7, Long, 346 S.E.2d at 780
("[S]tatements of opinion are absolutely protected under the
First Amendment and cannot form the basis for a defamation
action.").

18

Trump, Jr. alleges that the plaintiff has failed to state a claim for defamation because the reply tweet is incapable of a defamatory meaning.  Mem. Mot. Dismiss at 13. Trump, Jr. presents several arguments in support of this argument.  First, he alleges that the reply tweet does not identify the plaintiff "[d]ivorced from the originating tweet." Id.  Trump, Jr. asserts that the reply tweet, in the context of the other Twitter user's comment to which he replies, refers to Senator Manchin and not to the plaintiff.  See id.  Second, Trump, Jr. argues that the reply tweet is speculation about Senator Manchin's campaign and an opinion that "does not contain a provably false assertion of fact [and] is entitled to full constitutional protection."  See id. (citing Hupp v. Sasser, 490 S.E.2d 880, 885 (W. Va. 1997)).  Third, Trump, Jr. argues that the reply tweet was an exaggeration on his original point about the potential for attack ads against the plaintiff and that he was not "stating actual facts about an individual" but was instead offering "colorful rhetoric" to counter the other user's comment and to emphasize his point.  See id.  Trump, Jr. asserts that this type of "loose, figurative, or hyperbolic language" is protected by the First Amendment.  Id.  The plaintiff argues in opposition that the reply tweet is defamation per se because statements charging a person with the commission of a crime, whether a felony or a misdemeanor, are

actionable as defamation <u>per se</u> in West Virginia and do not
require proof of special damages.  <u>See</u> Pl.'s Resp. at 11-13
(citing <u>Colcord v. Gazette Pub. Co.</u>, 145 S.E. 751, 753 (W. Va.
1928); <u>Milan v. Long</u>, 88 S.E. 618, 619 (W. Va. 1916)).

Even though Trump, Jr. does not directly name the
plaintiff in the reply tweet, defamation may be accomplished
indirectly through inference, implication, innuendo, or
insinuation.  <u>See</u> <u>Crump</u>, 320 S.E.2d at 77.  The plaintiff is
clearly a subject of both the quote tweet and the reply tweet.
It is reasonable to infer that the tweets were directed, at
least in part, toward the plaintiff because Trump, Jr. uses the
antecedent "you" in the quote tweet: "[T]he first thing Manchin
will do is run ads featuring the families of those 29 miners
killed due to actions that sent <u>you</u> to prison."  <u>See</u> Compl. ¶ 59
(emphasis added).  In addition, the nature of Twitter posts,
including replies, is that they are in the public view.  There
is no requirement in a defamation suit that the statement be
directed toward the victim.

Trump, Jr.'s remaining arguments fail because labeling
the plaintiff a felon can constitute a provably false assertion
of fact.  Whether or not someone has committed a felony, and
therefore may be identified as a felon, is a factual
determination.  The plaintiff alleges that he has not been

convicted of a felony and that Trump, Jr.'s statement that he is a felon thus constitutes a false statement of fact.  The court concludes that the reply tweet calling the plaintiff a felon is capable of a defamatory meaning.

### (3)  *Injury*

Trump, Jr. attempts to re-hash the argument against the defamatory nature of the reply tweet by arguing that the plaintiff has failed to plead that the tweet tended to harm his reputation.  See Mem. Mot. Dismiss at 16.  In support of this, Trump, Jr. alleges that the plaintiff "generated strong feelings from the people of West Virginia long before he decided to run for Senate" through decades of public controversy in the state. See id. at 16-18.  Accordingly, Trump, Jr. argues that "[the plaintiff's] reputation precedes him."  See id. at 17.  The plaintiff responds that Trump, Jr.'s statements were defamatory per se and have caused him "enormous damages" by smearing his reputation and preventing him from pursuing other businesses and opportunities.  See Pl.'s Resp. at 17.

A statement may be considered defamatory "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  Crump, 320 S.E.2d at 77.

Trump, Jr.'s argument suggests that the plaintiff's reputation was already so low that it could not be lowered any more by the allegedly defamatory tweet.  The court rejects this argument because it isolates the plaintiff's reputation to a subset of Twitter users –- West Virginians who had a negative view of the plaintiff prior to the tweet.  Trump, Jr.'s tweets about the plaintiff were posted in public view for the entire world to read.  The fact that CNN, a national news source, reported on the initial tweet underscores this point.  Regardless of whatever reputation the plaintiff may have had in West Virginia, the complaint plausibly alleges that Trump, Jr.'s tweets lowered the plaintiff's reputation in communities both within the state and outside the state, particularly since the plaintiff was in a campaign for federal political office.

### (4)  *Substantial Accuracy or Reasonable Mistake*

> On the question of falsity:

> [West Virginia libel law] overlooks minor inaccuracies and concentrates upon substantial truth.  Minor inaccuracies do not amount to falsity so long as the substance, the gist, the sting, of the libelous charge be justified.  A statement is not considered false unless it would have a different effect on the mind of the reader from that which the pleaded truth would have produced.

Syl. Pt. 4, Gaughan, 480 S.E.2d at 551.  "[I]f something is 'substantially' true in overall effect, minor inaccuracies or

falsities will not create falsity." <u>Matter of Callaghan</u>, 796
S.E.2d 604, 627 (W. Va. 2017).

Trump, Jr. argues that the use of "felon" was
"substantially accurate" and that his failure to refer to the
plaintiff with the technical legal classification for his crime
of conviction was a "reasonable mistake." <u>See</u> Mem. Mot. Dismiss
at 14-16.  Trump, Jr. argues that the substance or gist of his
comments is in the reference to the plaintiff's conviction and
sentence, and not in the details of the length of the punishment
for the crime.  <u>See</u> <u>id.</u> 15.  The plaintiff argues that truth is
an absolute defense to a defamation claim and that Trump, Jr.
must prove that his statement is "substantially true" and that
any minor misstatements of fact or inaccuracies were immaterial.
<u>See</u> Pl.'s Resp. at 15.  The plaintiff further argues that
defense of substantial truth is normally a jury question and
that deciding this issue in a motion to dismiss is
inappropriate.  <u>See</u> <u>id.</u>

The court by its nature understands the distinction
between a misdemeanor and a felony.  Although the exact
difference between these categories may not be as clear to
general society, the court agrees with the plaintiff that
"society at large" might "view[] a 'felon' far differently than
a person who has committed an offense resulting in a misdemeanor

conviction." <u>See</u> <u>id.</u> at 16 (quoting <u>Myers v. The Telegraph</u>, 773 N.E.2d 192, 198 (Ill. App. Ct. 2002)). Thus, at the motion-to-dismiss stage, the court concludes that the complaint plausibly alleges that Trump Jr.'s tweet labeling the plaintiff a felon was not a substantial truth or a minor inaccuracy.

In addition, Trump, Jr. argues that it is untenable that his quote tweet alone or combined with any number of accurate descriptions of the plaintiff's criminal history would have created a different impression of the plaintiff on a reader. <u>See</u> Mem. Mot. Dismiss at 15. Trump, Jr. completely misses the point with this argument. Regardless of the potential impression that an accurate description could have on a reader, Trump, Jr.'s argument concedes that he did not provide an accurate description. The complaint plausibly alleges that Trump Jr's description was false, and the alternative descriptions that Trump, Jr. could have used but did not use are irrelevant at this stage.

B.   <u>False Light Invasion of Privacy</u>

West Virginia recognizes a legally protected interest in privacy. <u>Tabata v. Charleston Area Med. Ctr., Inc.</u>, 759 S.E.2d 459, 464 (W. Va. 2014). Publicity that unreasonably places another in a false light before the public is an

actionable invasion of privacy.  Syl. Pt. 12, Crump, 320 S.E.2d at 74.  In a false light invasion of privacy claim, the plaintiff must prove that: (1) the defendant gave publicity to a matter concerning the plaintiff that places the plaintiff before the public in a false light, (2) the publicity was widespread, (3) the matter of the publicity was false, (4) the false light in which the plaintiff was placed would be "highly offensive to a reasonable person," and (5) the defendant "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the [plaintiff] would be placed" (i.e., actual malice).  See Taylor v. W. Virginia Dep't of Health & Human Res., 788 S.E.2d 295, 315–16 (W. Va. 2016) (citing Restatement (Second) of Torts § 652E (1977)); Crump, 320 S.E.2d at 87-88.

False light invasion of privacy claims are similar to defamation claims in that both require the publication of false material regarding the plaintiff.  Crump, 320 S.E.2d at 87.  Also, "[i]n a false light privacy action, as in a defamation action, a court should not consider words or elements in isolation, but should view them in the context of the whole article to determine if they constitute an invasion of privacy."  Id. (quoting Rinsley, 700 F.2d at 1310).  West Virginia courts

therefore treat false light privacy claims in essentially the
same manner as they treat defamation claims.  <u>Id.</u>

Despite the similarities between defamation and
invasion of privacy, they remain distinct theories of recovery
with separate consideration.  <u>Id.</u> at 86.  Each action protects
different interests: defamation actions involve injury to
reputation, while privacy actions involve injury to emotions and
mental suffering.  <u>Id.</u> at 87.  Defamation requires a defamatory
statement, but false light invasion of privacy instead requires
the statement to be "offensive to a reasonable person."  <u>Id.</u>
False light invasion of privacy also requires widespread
publicity, which defamation does not require.  <u>Id.</u> at 87-88.

Trump, Jr. argues that the plaintiff has failed to
state a claim for false light invasion of privacy because the
plaintiff has not sufficiently pled actual malice.  <u>See</u> Mem.
Mot. Dismiss at 18.  Based on the previous analysis of actual
malice, the court finds that the plaintiff has alleged enough
facts for a plausible showing of actual malice in support of his
false light invasion of privacy claim.

C.    <u>Conspiracy</u>

The plaintiff alleges that members of the Republican
party conspired and formulated a "common plan" to prevent him

26

from winning the West Virginia Republican primary election.
Compl. ¶¶ 14, 18, 62, 78-79, 88-90.  The plaintiff further
alleges that Trump, Jr. acted as a "surrogate" to enact this
common plan and committed overt acts in furtherance of the
conspiracy by publishing false and misleading claims about the
plaintiff.  See id. ¶¶ 18, 78, 90.  The plaintiff therefore
alleges two claims of conspiracy: conspiracy to commit
defamation and conspiracy to commit false light invasion of
privacy.  See id. ¶¶ 68-91.

West Virginia recognizes the tort of civil conspiracy
as a cause of action.  Jane Doe-1 v. Corp. of President of The
Church of Jesus Christ of Latter-day Saints, 801 S.E.2d 443, 458
(W. Va. 2017).  "A civil conspiracy is a combination of two or
more persons by concerted action to accomplish an unlawful
purpose or to accomplish some purpose, not in itself unlawful,
by unlawful means."  Syl. Pt. 8, Dunn v. Rockwell, 689 S.E.2d
255, 259 (W. Va. 2009).  The cause of action is not created by
the conspiracy itself but by the wrongful acts done by the
defendants to injure the plaintiff.  Id.  "A civil conspiracy is
not a per se, stand-alone cause of action; it is instead a legal
doctrine under which liability for a tort may be imposed on
people who did not actually commit a tort themselves but who
shared a common plan for its commission with the actual

perpetrator(s)."  Syl. Pt. 9, <u>Dunn</u>, 689 S.E.2d at 259.  A civil conspiracy must therefore be based on an underlying tort or wrong.  <u>O'Dell v. Stegall</u>, 703 S.E.2d 561, 596 (W. Va. 2010) (citing <u>Dunn</u>, 689 S.E.2d).

In order for a civil conspiracy to be actionable, the plaintiff must prove that the defendants have committed "some wrongful act or have committed a lawful act in an unlawful manner to the injury of the plaintiff." <u>Dunn</u>, 689 S.E.2d at 268–69.  A civil conspiracy may be proven by circumstantial evidence.  <u>See</u> <u>Jane Doe-1</u>, 801 S.E.2d at 473.  Although a civil conspiracy claim requires an underlying tort or harm resulting from the conspiracy, the claim may be disposed of separately from the remaining causes of action.  <u>See</u> <u>id.</u> at 458.

Trump, Jr. does not address the conspiracy claims in the motion to dismiss.  The court therefore does not rule on the sufficiency of these claims.

IV.  Conclusion

For the foregoing reasons, it is ORDERED that the defendant's motion to dismiss be, and it hereby is, denied.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record.

ENTER: September 1, 2021

John T. Copenhaver, Jr.
Senior United States District Judge