# SUPPLEMENT #1

# Clues on How Roberts Might Rule on Libel

Sept. 27, 2005

**Correction Appended**

Buried in the 93 pages of Judge John G. Roberts Jr.'s responses to written questions from members of the Senate Judiciary Committee, released on Wednesday, was a tantalizing discussion of libel law. It provided some clues about how Judge Roberts might rule in cases involving the press should the full Senate approve his nomination to be chief justice of the United States when it votes this week.

Senator Charles E. Schumer, Democrat of New York, asked Judge Roberts for his views on New York Times v. Sullivan, the 1964 Supreme Court decision that revolutionized American libel law. Judge Roberts's response was terse and cautious, but it contained a faint echo of a blistering 30-page critique of the case that he wrote as a White House lawyer in the Reagan administration in the early 1980's.

The critique was vigorous, brilliantly written and informed by a deep hostility toward the press, said Anthony Lewis, the author of "Make No Law: The Sullivan Case and the First Amendment" and a former columnist for The New York Times.

"It's quite an astonishing document," Mr. Lewis said of the critique. "He's not a fan of the press. He speaks of 'the zeal and insouciance with which the mass media assails public officials.'"

The Sullivan case held that the First Amendment required public officials suing for libel to prove that the statements they complained of were made with "actual malice" -- that is, with knowledge that the statements were false or with reckless disregard as to whether they were false.

When Judge Roberts was asked about other Supreme Court cases during his confirmation hearings, he sometimes embraced them as correct. He said he had "no quarrel" with others. In his written response to Mr. Schumer's question on the Sullivan case, Judge Roberts said only that it "is a precedent of the court, and I would start with it in any case implicating this area of the law."

His assessment of the case was much harsher in his undated White House memorandum, titled "New York Times v. Sullivan: A Blight on Enlightened Public Discourse and Government Responsiveness to the People." The decision, he wrote there, was "profoundly flawed."

In the memorandum, Mr. Roberts said the legal standard used in most injury cases, negligence, should be adequate to protect the press.

It is much easier for plaintiffs to win libel suits under the negligence standard. Where the actual malice standard is subjective, requiring proof of what the defendant knew and believed, the negligence standard is objective, asking a jury to assess only what a reasonable person would have done in the circumstances.

The Sullivan decision, the memorandum said, overstated the social value of the press. "Any assumption that media coverage of government institutions and public officials is the centerpiece of effective democracy," Mr. Roberts wrote, "is misplaced."

To the contrary, he wrote, "by crowning the media with virtual absolute immunity for falsely assailing public officials," the Sullivan ruling "obstructs the ability of the president and other public officials to recruit talented and loyal supporters."

The memorandum, said Geoffrey R. Stone, a law professor at the University of Chicago and an author of several books on the First Amendment, is "for the most part a familiar critique of Sullivan" and "is basically a reasonable counterargument." Since the Sullivan decision is "well embedded in the law," Professor Stone said, it is unlikely to be fundamentally altered any time soon.

But questions about the scope of Sullivan remain, as Judge Roberts noted in his reply to Mr. Schumer. Later Supreme Court rulings expanded the decision's scope to include not only government officials but also public figures, like celebrities and other prominent people.

As an appeals court judge in 2003, Judge Roberts heard a case involving the limits of the public figure doctrine brought by Lt. Carey D. Lohrenz, one of the first female combat pilots in the Navy.

Lieutenant Lohrenz claimed that a group opposed to combat roles for women had defamed her by taking issue with her competence. The question of whether she was a public figure required to prove actual malice was, legal experts said, a close one.

Judge Roberts joined a unanimous decision of a three-judge panel in the case, ruling that Lieutenant Lohrenz's decision to pursue the combat assignment had turned her into a public figure. It added that she could not prove actual malice, and it dismissed the case.

Rodney A. Smolla, dean of the University of Richmond law school and a First Amendment authority, represented Lieutenant Lohrenz. "He applied Sullivan generously," Professor Smolla said of Judge Roberts. "At least as a lower court judge, that's evidence of a fidelity to stare decisis," or respect for precedent, "whatever his privately held suspicions about New York Times v. Sullivan."

Correction: September 28, 2005, Wednesday An article yesterday about Judge John G. Roberts Jr.'s views on libel law attributed a critique of a Supreme Court decision to him erroneously. Mr. Roberts did criticize the decision, New York Times v. Sullivan, in a 1985 memorandum. But a separate unsigned 30-page critique that was among the papers released from his years as a lawyer in the Reagan administration was not his; it was written by Bruce Fein, who was general counsel for the Federal Communications Commission in the Reagan administration. A corrective article appears today, on Page A20.