UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


DON BLANKENSHIP,

        Plaintiff,

v.                                  Civil Action No. 2:19-cv-00549

DONALD TRUMP, JR.; and
DOES 1-50 inclusive,

        Defendants.


MEMORANDUM OPINION AND ORDER


        Pending is the defendant's motion for summary
judgment, filed May 11, 2022.  ECF 69.  In opposition, plaintiff
filed a motion to deny defendant's motion for summary judgment,
which is more properly characterized as a response in
opposition.  See ECF 74.


I.   Factual Background


        The plaintiff, Don Blankenship ("plaintiff"),
initiated this action on or about April 25, 2019, in the Circuit
Court of Mingo County, West Virginia, against the defendant,
Donald Trump, Jr. ("Trump, Jr."), for claims of defamation,
false light invasion of privacy, and conspiracy to commit

defamation and false light invasion of privacy.[1]  See ECF 1-2.
The action was removed to this court pursuant to 28 U.S.C. §
1441 based on the original jurisdiction of this court under 28
U.S.C. § 1332(a)(1).[2]  ECF 1.

        Following an explosion at Upper Big Branch, a West
Virginia coal mine, on April 5, 2010, which resulted in the
death of twenty-nine miners, the United States government
initiated an investigation into the cause of the explosion.  See
ECF 1-2 ¶¶ 36-38.  While the plaintiff was not charged with the
death of the miners or with causing the explosion, the
government charged the plaintiff with three felonies, including
conspiracy to defraud the federal Mine Safety and Health
Administration, and one misdemeanor for conspiracy to violate
federal mine safety laws.  See id. ¶ 41.  On December 3, 2015, a
federal jury found the plaintiff not guilty of the felony

---

[1] The plaintiff also lists Does 1-50 as defendants, who are
"other persons currently unknown to Plaintiff" who shared a
common plan with Trump, Jr. to defeat the plaintiff in the 2018
Republican primary election in West Virginia for the United
States Senate seat. See ECF 1-2 ¶¶ 78, 89-90.

[2] The plaintiff has filed three other actions alleging similar
claims against other defendants.  See Blankenship v. Bos. Globe
Media Partners, No. 2:19-cv-00589 (S.D.W. Va.); Blankenship v.
Fox News Network LLC, No. 2:19-cv-00236 (S.D.W. Va.);
Blankenship v. NBCUniversal LLC, No. 2:20-cv-00278 (S.D.W. Va.).
The court granted summary judgment in favor of these defendants
on February 2, 2022, which was affirmed as to all three cases in
Blankenship v. NBCUniversal LLC, 60 F.4th 744(4th Cir. 2023).

charges but convicted him of the misdemeanor offense.  Id. ¶ 43.
The plaintiff was sentenced to one year in prison, which the
plaintiff served and from which he was released in the spring of
2017.  Id. ¶¶ 44-45.

In January 2018, the plaintiff announced his campaign
to run as a Republican for a United States Senate seat in West
Virginia.  Id. ¶ 46.  The Republican primary election was
scheduled for May 8, 2018.  Id.  The plaintiff alleges that
political and news media figures conspired to defeat his
candidacy by referring to the plaintiff as a "felon" or a
"convicted felon," despite the fact that the plaintiff was
cleared of the felony charges and was only convicted of the
misdemeanor offense.  See id. ¶¶ 3-4, 17-24, 49-54, 62-67.  One
of these figures was Trump, Jr.  On May 3, 2018, after allegedly
attending a meeting with members of the National Republican
Senatorial Committee ("NRSC"), Trump, Jr. published a series of
tweets about the plaintiff from his Twitter handle
@DonaldTrumpJr.  See id. ¶¶ 57-59.

The first tweet on May 3, 2018, states:

I hate to lose. So I'm gonna go out on a limb here and
ask the people of West Virginia to make a wise
decision and reject Blankenship!  No more fumbles like
Alabama. We need to win in November.  #wv #wvpol

See id. ¶ 57.  In response, the plaintiff issued a press release that afternoon in which he promoted his candidacy.  See id. ¶ 58.

      Later on May 3, 2018, Trump, Jr. posted a second tweet ("quote tweet"[3]), in response to a tweet from CNN reporter Dan Merica's Twitter handle @merica. See id. ¶ 59.  Merica's tweet reads:

> Trump's son urges West Virginia Republicans to reject Blankenship, who responds by labeling @DonaldJTrumpJr part of the "establishment."

Id.  Mr. Merica's tweet includes a link to his CNN news article about Trump, Jr.'s earlier tweet urging West Virginia Republicans to "reject Blankenship."  See id. The first part of the article reads:

> President Donald Trump's son Donald Trump Jr. urged West Virginia Republicans on Thursday to reject Don Blankenship in next week's primary, comparing the coal baron to failed Alabama Senate candidate Roy Moore.
>
> "I hate to lose.  So I'm gonna go out on a limb here and ask the people of West Virginia to make a wise decision and reject Blankenship!  No more fumbles like Alabama," he wrote on Twitter.  "We need to win in November."
>
> The comment from the President's son is the clearest signal yet that national Republicans are worried that Blankenship's upstart campaign could upend plans to run either Republican Rep. Evan Jenkins or Attorney

---

[3] According to Twitter, a "quote tweet," "allows [a user] to Tweet another person's Tweet with [their] own comment added." Twitter, https://help.twitter.com/en/using-twitter/types-of-tweets (last visited March 27, 2023).

> General Patrick Morrisey against vulnerable Democratic
> Sen. Joe Manchin in November.  National Republicans
> were worried when Blankenship jumped into the race,
> given that the former CEO of Massey Energy had just
> recently finished serving a yearlong sentence
> following a misdemeanor conviction for his involvement
> in the deadliest US mine explosion in four decades
> . . . . .

Dan Merica, <u>Trump's Son Urges West Virginia Republicans to
Reject Blankenship</u>, CNN, May 3, 2018,
https://www.cnn.com/2018/05/03/politics/trump-jr-don-
blankenship.[4]

Trump, Jr.'s quote tweet includes his own comments,
the tweet from Dan Merica, and the link to the CNN news article.
<u>See</u> ECF 1-2 ¶ 59. Trump, Jr.'s quote tweet comment includes:

> Ha, now I'm establishment?  No, I'm realistic & I know
> the first thing Manchin will do is run ads featuring
> the families of those 29 miners killed due to actions
> that sent you to prison.  Can't win the general... you
> should know that & if others in the GOP won't say it,
> I will.

<u>Id.</u>  Another Twitter user replied to Trump, Jr.'s tweet: "Don't
think Manchin will do that. His ads are usually ab[ou]t him."[5]

---

[4] Of note, Mr. Merica's article does not make any reference to
the number of coal miners who died at the Upper Big Branch Mine
disaster.

[5] A reply to a tweet appears embedded below the original tweet as
part of a conversation string.  Users can also reply to replies,
since each reply is itself a tweet.

Id.  Trump, Jr. replied to this tweet on May 3, 2018, with a
third tweet ("reply tweet"), which reads:

    He's probably never run against a felon.

Id.  The plaintiff argues that Trump, Jr.'s reply tweet refers
to him as a felon and is materially false because he has never
been convicted of a felony.  See id. ¶¶ 60, 69.  The plaintiff
also alleges that Trump, Jr.'s reply tweet was made in
conjunction with reference to the mine explosion from his quote
tweet, which had the additional effect of falsely attributing to
the plaintiff responsibility for murder.  See id. ¶ 23, 74.

    The plaintiff alleges that five days before the West
Virginia Republican Primary election on May 8, 2018, Trump, Jr.
published the false and defamatory statements on Twitter "at the
request of the NRSC and others as part of their efforts to smear
Mr. Blankenship and defeat his candidacy."[6]  Id. ¶ 62.  The
plaintiff also alleges that Trump, Jr. never issued a correction
or retraction about the tweets, nor has he removed the tweets

---

[6] The plaintiff also alleges that a "push poll" was conducted on
or about March 25, 2018, by unknown persons "wherein phone
operators would call potential voters in West Virginia
purporting to conduct political polling and asking the voters
questions predicated on the idea that Mr. Blankenship was a
'felon.'  Rather than simply to collect information to assist
with the defamation campaign against Mr. Blankenship, the 'push
poll' also intended to defame Mr. Blankenship...."  ECF 1-2 ¶
50.  The court understands this allegation to be against the
Does 1-50.  Inasmuch as Does 1-50 have not been identified they
are DISMISSED from this action.

from public view.  See id. ¶ 61.  The plaintiff lost his bid for the Republican party nomination in the primary election on May 8, 2018.  Id. ¶ 66.

The plaintiff asserts that Trump, Jr.'s defamatory statements on Twitter caused him "enormous damages" by injuring his reputation, preventing him from pursuing other businesses and economic opportunities, and being a material cause of his loss in the primary election.  Id. ¶¶ 25, 66.  The plaintiff filed this suit asserting four causes of action, though the complaint lists them in two counts.  See id. ¶¶ 68, 91.  In all, the plaintiff asserts causes of action for (1) defamation, (2) conspiracy to defame, (3) false light invasion of privacy, and (4) conspiracy to commit false light invasion of privacy.  See id.

On May 11, 2022, Trump, Jr. filed a motion for summary judgment, ECF 69, and memorandum of law in support.  ECF 70. The plaintiff filed his motion to deny Trump, Jr.'s motion for summary judgment, ECF 74, and accompanying memorandum of law, ECF 75, on June 1, 2022.  On June 9, 2022, Trump, Jr. filed a reply to plaintiff's response in opposition.  ECF 76.

Trump, Jr. claims he is entitled to summary judgment because: (1) there is no record evidence that he acted with actual malice against plaintiff, (2) his statement was not

"materially false," and (3) plaintiff cannot establish the required elements of causation or damages.  ECF 70 at 2.  In his response, the plaintiff asserts Trump, Jr.'s quote tweet of Mr. Merica's article, "is affirmative evidence that Trump Jr. was subjectively aware of the falsity of the reply tweet or entertained serious doubts about the accuracy thereof."  ECF 75 at 2.  Additionally, the plaintiff urges this court to revisit the actual malice standard first recognized in New York Times Co. v. Sullivan, 376 U.S. 254 (1964), and to uphold plaintiff's constitutional right "to a jury trial under the Seventh Amendment."[7]  Id. at 16–19.  In his reply, Trump, Jr. reiterates the points made in his memorandum of law and asserts the plaintiff has failed to identify clear and convincing evidence that satisfies the "high hurdles" of New York Times, 376 U.S. 254 (1964).  ECF 76 at 1.

## II.  Governing Standard

A party is entitled to summary judgment "if the pleadings, the discovery and disclosure materials on file, and

---

[7] While New York Times has been subject to recent criticism and calls for reconsideration, see Berisha v. Lawson, 141 S. Ct. 2424, 2424 (2021) (Thomas, J., dissenting from denial of certiorari); id. at 2425 (Gorsuch, J., dissenting from denial of certiorari); Tah v. Global Witness Publ'g, Inc., 991 F.3d 231, 243 (D.C. Cir. 2021) (Silberman, J., dissenting in part), it remains binding precedent that the court is obliged to follow.

any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Material facts are those necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A genuine issue of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing -- "that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts as would be admissible in evidence that demonstrate the existence of a genuine issue of fact for trial. Fed. R. Civ. P. 56(c); id. at 322-23. A party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).

Conversely, summary judgment is inappropriate if the evidence is sufficient for a reasonable fact-finder to return a

verdict in favor of the non-moving party.  Anderson, 477 U.S. at 248.  Even if there is no dispute as to the evidentiary facts, summary judgment is also not appropriate where the ultimate factual conclusions to be drawn are in dispute.  Overstreet v. Ky. Cent. Life Ins. Co., 950 F.2d 931, 937 (4th Cir. 1991).

A court must neither resolve disputed facts nor weigh the evidence, Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995), nor make determinations of credibility. Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986).  Rather, the party opposing the motion is entitled to have his or her version of the facts accepted as true and, moreover, to have all internal conflicts resolved in his or her favor.  Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979). Inferences that are "drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion."  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

### III.  Analysis

Federal courts exercising jurisdiction through diversity of citizenship must apply state substantive law.  Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); see also Stonehocker v. Gen. Motors Corp., 587 F.2d 151, 154 (4th Cir. 1978) ("[F]ederal courts are to apply the substantive law the

State in which they are sitting would apply if the case had originated in a State court.").  In this instance, because the court's jurisdiction is based on diversity of citizenship, the court will consider relevant case law from the Supreme Court of Appeals of West Virginia.

A.  <u>Defamation</u>

Defamation is "[a] false written or oral statement that damages another's reputation."  <u>Pritt v. Republican Nat. Comm.</u>, 557 S.E.2d 853, 861 n.12 (W. Va. 2001) (quoting Black's Law Dictionary 427 (7th ed. 1999)).  Defamation published in written form constitutes libel.  Syl. Pt. 8, <u>Greenfield v. Schmidt Baking Co.</u>, 485 S.E.2d 391, 394 (W. Va. 1997).  West Virginia law identifies three types of plaintiffs in defamation cases: (1) public officials and candidates for public office, (2) public figures, and (3) private individuals.  Syl. Pt. 10, <u>Hinerman v. Daily Gazette Co.</u>, 423 S.E.2d 560, 564 (W. Va. 1992).

Here, the record is replete with evidence which shows the plaintiff was a candidate for public office, and also a public figure.  <u>See</u> ECF 1-2 ¶¶ 2-26, 35-66.  Moreover, in his response to Trump, Jr.'s motion for summary judgement, the plaintiff acknowledges, "[a]s a candidate for public office, Plaintiff is a 'public figure' for purposes of this case and

thereby subject to the actual malice standard."  ECF 75 at 10.

Therefore, for the purposes of this analysis, the court will

treat the plaintiff as a candidate for public office.[8]  As a

candidate for political office, in order to prevail on his

defamation claim, the plaintiff must show that

> (1) there was the publication of a defamatory
> statement of fact or a statement in the form of an
> opinion that implied the allegation of undisclosed
> defamatory facts as the basis for the opinion; (2) the
> stated or implied facts were false; and, (3) the
> person who uttered the defamatory statement either
> knew the statement was false or knew that he was
> publishing the statement in reckless disregard of
> whether the statement was false.

Pritt, 557 S.E.2d at 861 (quoting Syl. Pt. 1, Hinerman, 423

S.E.2d at 563 (emphasis omitted.)).[9]  Under the "actual malice"

standard, developed in New York Times Co.v. Sullivan, to sustain

a defamation action, a plaintiff who is a candidate for public

---

[8] Whether Mr. Blankenship is deemed a "public figure," "candidate
for public office," or both, it is clear that in order to
prevail he must show Trump, Jr. acted with actual malice.  See
Syl. Pt. 11, Pritt, 557 S.E.2d at 855-56.  For the purposes of
this analysis, the court notes, the record shows Trump, Jr.'s
tweets were made on May 3, 2018.  This was five days before the
Republican Primary; thus, at the time of the alleged defamatory
statement, Mr. Blankenship was a candidate for public office.

[9]  In defamation cases involving candidates for public office,
West Virginia law appears to also require the plaintiff to show
the defendant intended to injure the plaintiff by publishing the
statement.  See Pritt, 557 S.E.2d at 861.  However, because Mr.
Blankenship fails to satisfy the actual malice standard, the
court need not address the other elements of defamation.

office must also prove that the statement was made with "knowledge that it was false or with reckless disregard of whether it was false or not."  376 U.S. at 279-80.  The Supreme Court of Appeals has noted "[t]he New York Times model has become the standard for this Court's evaluation of claims of defamation by public officials."  Chafin v. Gibson, 578 S.E.2d 361, 366 (W. Va. 2003).  Additionally, the plaintiff must show actual malice through clear and convincing evidence.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).

Trump, Jr. claims summary judgment is appropriate because the plaintiff has failed to produce any evidence to show the reply tweet was published with actual malice.[10]  ECF 70 at 8-11.  In response, the plaintiff argues that the article Trump, Jr. included in his quote tweet, establishes Trump, Jr. acted with actual malice when calling the plaintiff a felon.  ECF 75 at 10-12.

In New York Times, the Supreme Court first articulated the actual malice standard.  376 U.S. 254 (1964).  In this

---

[10] Trump, Jr. also argues summary judgment is appropriate because his statement was not materially false and that his statement did not cause the plaintiff any damages.  As the court explains, the plaintiff's defamation claim fails because he has failed to produce clear and convincing evidence that Trump, Jr. acted with actual malice.  Therefore, the court need not consider Trump, Jr.'s remaining arguments.

decision the Court defined actual malice to mean a statement made, with "knowledge that it was false or with reckless disregard of whether it was false or not."  Id. at 279-80.  In St. Amant v. Thompson, the Supreme Court further explained the actual malice standard and stated

> reckless conduct is not measured by whether a reasonably prudent man would have published or would have investigated before publishing.  There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.  Publishing with such doubts shows reckless disregard for truth or falsity and demonstrates actual malice.

390 U.S. 727, 731 (1968) (emphasis added.).  In continuing to refine the actual malice standard, the Court has emphasized that "[a]ctual malice under the New York Times standard should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will."  Masson v. New Yorker Magazine, Inc., 501 U.S. 496, 510-11 (1991) (citing Greenbelt Cooperative v. Publishing Assn., Inc. v. Bresler, 398 U.S. 6 (1970)).  The "standard is a subjective one – there must be sufficient evidence to permit the conclusion that the defendant actually had a 'high degree of awareness of ...probable falsity.'"  Cannon v. Peck, 36 F.4th 547, 566 (4th Cir. 2022) (quoting Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 688 (1989)).

In the case at hand, the plaintiff asserts Trump, Jr.

acted with actual malice, because his reply tweet, in which he called the plaintiff a felon, occurred after he had quote tweeted Mr. Merica's article which stated the plaintiff was convicted of only a misdemeanor. ECF 75 at 10-12. The plaintiff continues by claiming "[a] jury would inevitably draw multiple legitimate inferences in Plaintiff's favor from this affirmative evidence." Id. at 10-11. First, the plaintiff claims a jury would "logically deduce" that Trump Jr. read the article he quote tweeted before posting his reply tweet. Id. at 11. Next, he asserts a jury "would obviously conclude" that Trump, Jr. had not forgotten that the plaintiff was convicted of a misdemeanor when he posted his reply tweet. Id. Finally, the plaintiff alleges "a jury would likely extrapolate" that Trump, Jr. knew the exact number of coal miners who died in the mine disaster (as referenced in his quote tweet), only by having read an article hyperlinked [11] ("hyperlinked article") in Mr. Merica's article. Id.

The court finds the evidence presented by the plaintiff is wholly insufficient to show Trump, Jr. knew what he tweeted was false or that he had a high degree of awareness of

---

[11] A hyperlink is "[t]he part of a computer document, such as a picture or passage, on which a user can click to move to another document." Black's Law Dictionary (11th ed. 2019).

its probable falsity. First, Mr. Merica's article makes no reference to the number of coal miners who died in the mine disaster. Instead, the plaintiff's claim is that Trump, Jr. must have clicked on a hyperlink that plaintiff says was embedded within Mr. Merica's article, which then took Trump, Jr. to another CNN article that simply reported a proposed investigation of the death of the twenty-nine miners. There is no record evidence before this court that shows that the "hyperlinked article" was in fact embedded as a hyperlink within Mr. Merica's article.

Next, there is no evidence before the court which shows Trump, Jr. read Mr. Merica's article or the supposed hyperlinked article, before he posted his reply tweet. This is despite the plaintiff having had the opportunity to serve written discovery on Trump, Jr., and having taken his deposition. Instead, the plaintiff makes tenuous inferences, that simply do not provide clear and convincing evidence that Trump, Jr. acted with actual malice. While the court is required to view all reasonable inferences in favor of the nonmovant, the Fourth Circuit Court of Appeals has long reasoned "permissible inferences must still be within the range of probability." C & H Co. v. Richardson, 78 Fed. Appx. 894, 905 (4th Cir. 2003) (quoting Ford Motor Co. v. McDavid, 259 F.2d

261, 266 (4th Cir. 1958)).  The inferences the plaintiff asks this court to accept are speculative and in no way go to show the subjective intent of Trump, Jr.

Indeed, the record evidence in this matter fails to show that Trump, Jr. had knowledge of the falsity of his tweets or that he had a subjective belief that there was a high probability his statements were false.  During his deposition on December 6, 2021, Trump, Jr. testified that, at the time of his May 3, 2018, tweets, he was unaware that the plaintiff was convicted of only a misdemeanor.  ECF 69-3 at 2.  He testified to the following concerning how he concluded the plaintiff was a felon:

> Q.:  Where did you have -- what other sources did you see that called Mr. Blankenship a felon?
> A.:  Well, I saw Senators talking about it on television. I saw TV pundits talking about it. I read newspaper articles about it.  And so that's how I came to that conclusion.
>
> Q.  I'm sorry.  So you said you had other sources. What other sources are you talking about?
>
> A.  I just remember numerous.  I don't know which specifically at this point.  But it was pretty widespread all over the media that that was the case.

Id. at 3.  Furthermore, Trump, Jr. remembered "most" of "[t]he big political" broadcast networks had referred to the plaintiff as a felon, including Fox, MSNBC, and CNN, and he had seen the plaintiff be called a felon "pretty much everywhere."  Id. at 4.

Trump, Jr.'s testimony that there was widespread usage of the term "felon" to describe the plaintiff is supported by the allegations found in the plaintiff's first amended complaint (the operative complaint) filed in his case against Fox News and 107 other defendants.  See Blankenship v. Fox News Network, LLC, No. 2:19-cv-00236, ECF 14.  Trump, Jr. has attached the first amended complaint as evidence in support of his motion for summary judgment.  ECF 69-2.  As Trump, Jr. has accurately noted, the plaintiff in his first amended complaint against Fox News and 107 other defendants claimed in paragraphs 149 to 171 that on at least eleven occasions prior to May 3, 2018, widespread media publication, including multiple publications on each Fox News, CNN, MSNBC, and other media outlets, occurred which referred to the plaintiff as a  "felon," "ex-felon," or that he was imprisoned for manslaughter.[12]  ECF 70 at 3-4.  That practice, according to plaintiff in that same complaint, continued unabated down to election day on May 8, 2018, and

---

[12] As noted in the Fourth Circuit opinion, authored by Chief Judge Gregory, affirming the summary judgment awarded to defendants in other defamation actions brought by the plaintiff, "Blankenship was charged with and convicted of a federal conspiracy offense in the wake of a mine disaster that killed twenty-nine people, and ... was sentenced to one year in federal prison—exactly one day less than a felony sentence." Blankenship, 60 F.4th at 759.  Chief Judge Gregory then notes, "this linguistic issue helps explain why certain journalists might have believed it was acceptable to refer to Blankenship as a felon...." Id. n.7.

beyond.  <u>See</u> ECF 69-2 at ¶¶ 172-220.  In view of this

phenomenon, it is not surprising to learn that Trump, Jr. stated

that at the time he called the plaintiff a felon -- just five

days before the primary election -- he believed he was

accurate.[13]  ECF 69-3 at 5-6.

     The plaintiff has failed to rebut any of this

evidence, and has provided little evidence, aside from the

tenuous inferences the plaintiff asks this court to draw from

Trump, Jr.'s quote tweet and Mr. Merica's article.  The

plaintiff did provide ten attachments in support of his motion

to deny summary judgment.  ECF 74.  The court finds supplement

attachment numbers 1, 2, and 3 to be irrelevant[14] to adjudicating

the motion for summary judgment.  ECF 74-8, 74-9, 74-10.  As for

the other seven exhibits, four of them are simply screenshots of

_____

[13] At the summary judgment stage, the court does not credit
Trump, Jr.'s self-serving statements about his state of mind
over contrary evidence.  <u>See</u> <u>Anderson</u>, 477 U.S. at 255.

[14] Supplement attachment number 1 is an article titled, <u>Clues on</u>
<u>How Roberts Might Rule on Libel</u>, supplement attachment number 2
is an article titled, <u>A Libel Story: Sullivan Then and Now</u>, and
supplement attachment number 3 is an article titled, <u>Methods for</u>
<u>Controlling Explosion Risk at Coal Mine Working Faces</u>.  As for
the first two supplement attachments, the court in footnote 7,
<u>supra</u>, has already concluded despite calls to revisit the <u>New</u>
<u>York Times</u> standard, it remains binding precedent on this court,
which the court is obliged to follow.  As for supplement
attachment 3, the court finds this article does not remotely
relate to the issues involved in adjudicating this motion for
summary judgment.

the tweets at issue, all quoted above.  ECF 74-1, 74-3, 74-4, 74-5.  Another one is Mr. Merica's article, ECF 74-2, and still another is the hyperlinked article.  ECF 74-6.  The final exhibit, ECF 74-7, is a single page screenshot of a brief text conversation between unnamed persons, filed in support of the plaintiff's conspiracy claims.  See ECF 75 at 15.  It is not clear to the court who this text conversation was between.  What is clear is that the text messages do not make any defamatory statement towards the plaintiff.

The record evidence before the court falls well short of showing by clear and convincing evidence that Trump, Jr. "entertained serious doubts as to the truth of the publication," St. Amant, 390 U.S. at 731, or "actually had a high degree of awareness of ... probable falsity."  Connaughton, 491 U.S. at 688 (quoting Garrison v. Louisiana, 379 U.S. 64, 74 (1964)).

Because the plaintiff has failed to produce clear and convincing evidence showing Trump, Jr. acted with actual malice, the court finds Trump, Jr. is entitled to summary judgment on the plaintiff's defamation claim.

## B.   False Light Invasion of Privacy

West Virginia recognizes a legally protected interest in privacy.  Tabata v. Charleston Area Med. Ctr., Inc., 759

S.E.2d 459, 464 (W. Va. 2014).  "Publicity which unreasonably places another in a false light before the public is an actionable invasion of privacy."  Syl. Pt. 12, <u>Crump v. Beckley Newspapers, Inc.</u>, 320 S.E.2d 70, 74 (1983).  While the Supreme Court of Appeals has not definitively set forth elements for this claim, it appears a plaintiff who qualifies as a candidate for public office must prove that: (1) the defendant gave publicity to a matter concerning the plaintiff that places the plaintiff before the public in a false light, (2) the publicity was widespread, (3) the matter of the publicity was false, (4) the false light in which the plaintiff was placed would be "highly offensive to a reasonable person," and (5) the defendant "had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the [plaintiff] would be placed" (i.e., actual malice).  <u>Taylor v. W. Virginia Dep't of Health & Human Res.</u>, 788 S.E.2d 295, 315–16 (W. Va. 2016) (citing Restatement (Second) of Torts § 652E (1977)); <u>see</u> <u>Crump</u>, 320 S.E.2d at 87-88.

Although "false light invasion of privacy is a distinct theory of recovery entitled to separate consideration and analysis," such claims are similar to defamation claims and courts often treat them in essentially the same manner. <u>Crump</u>, 320 S.E.2d at 87. As the Supreme Court of Appeals has

recognized, the First Amendment-derived actual malice standard announced in New York Times applies to claims for false light invasion of privacy brought by plaintiffs who are public officials or public figures. See Crump, 320 S.E.2d at 88-89 (citing Curtis Publ'g Co. v. Butts, 388 U.S. 130 (1967); Time, Inc. v. Hill, 385 U.S. 374 (1967)).

Thus, to withstand summary judgment on his false light invasion of privacy claim, Mr. Blankenship, as a matter of federal constitutional law, must adduce sufficient evidence that could reasonably support a jury finding of actual malice by clear and convincing evidence. See Anderson, 477 U.S. at 255 (finding "where the New York Times 'clear and convincing' evidence requirement applies, the trial judge's summary judgment inquiry as to whether a genuine issue exists will be whether the evidence presented is such that a jury applying that evidentiary standard could reasonably find for either the plaintiff or the defendant."); see also Howard v. Antilla, 294 F.3d 244, 248-49, 252 (1st Cir. 2002) (requiring actual malice to be proved by clear and convincing evidence for false light invasion of privacy claim); Solano v. Playgirl, Inc., 292 F.3d 1078, 1084 (9th Cir. 2002) (same); Ashby v. Hustler Mag., Inc., 802 F.2d 856, 860 (6th Cir. 1986) (same); Douglass v. Hustler Mag., Inc., 769 F.2d 1128, 1139-40 (7th Cir. 1985) (finding reasonable jury

could conclude magazine acted with actual malice to support a claim for false light invasion of privacy); Peoples Bank & Tr. Co. of Mountain Home v. Globe Int'l Publ'g, Inc., 978 F.2d 1065, 1067 & n.2 (8th Cir. 1992) (noting district court properly required jury to find actual malice be shown by clear and convincing evidence for false light invasion of privacy claim); Parson v. Farley, 800 F. App'x 617, 623 (10th Cir. 2020) (affirming jury instructions requiring actual malice to be proved by clear and convincing evidence for false light invasion of privacy claim).

In this instance, Trump, Jr. alleges summary judgment is proper for the plaintiff's false light invasion of privacy claim for four reasons. Id. at 11-15. First, he argues describing the plaintiff as a felon was not materially false. Id. at 11-12. Next, he asserts the plaintiff's claim fails as a matter of law because the "misstatement had already been widely publicized by the media before" his tweet was made. Id. at 13. Third, he argues that like the plaintiff's defamation claim, plaintiff's false light invasion of privacy claim fails because he cannot show actual malice. Id. Finally, he says the plaintiff cannot show Trump, Jr.'s tweet caused him damages. Id. at 13-15.

As explained above, in order to recover under a claim of false light invasion of privacy, the plaintiff must show actual malice by clear and convincing evidence.  Summary judgment in favor of Trump, Jr. is appropriate because, similar to plaintiff's defamation claim, the plaintiff has provided no evidence to show the actual malice required to support a claim of false light invasion of privacy.  Consequently, the court need not discuss the remainder of Trump, Jr.'s arguments in favor of summary judgment.  The court thus finds summary judgment in favor of Trump, Jr is appropriate as to the plaintiff's claim of false light invasion of privacy.

C.   <u>Civil Conspiracy Claims</u>

In addition to his defamation and false light invasion of privacy claims, the plaintiff's complaint also contains sufficient factual allegations alleging Trump, Jr. participated in a "shared common plan with the NRSC and other persons currently unknown to Plaintiff (sued herein as Does 1-50), and each of them, for the commission of the tort of defamation" and "false light invasion of privacy."  ECF 1-2 ¶¶ 78, 88.

West Virginia recognizes the tort of civil conspiracy as a cause of action.  <u>Jane Doe-1 v. Corp. of President of The Church of Jesus Christ Latter-day Saints</u>, 801 S.E.2d 443, 458 (W. Va. 2017).  "A civil conspiracy is a combination of two or

24

more persons by concerted action to accomplish an unlawful

purpose or to accomplish some purpose, not in itself unlawful,

by an unlawful means." Syl Pt. 8, Dunn v. Rockwell, 689 S.E.2d

255, 259 (W. Va. 2009). A claim for civil conspiracy is not

created by the conspiracy itself "but by the wrongful acts done

by the defendants to the injury of the plaintiff." Id. A civil

conspiracy therefore "is not a per se, stand-alone cause of

action." Syl. Pt. 9, Dunn, 689 S.E.2d at 259. Instead, it is a

"legal doctrine under which liability for a tort may be imposed

on people who did not actually commit a tort themselves but who

shared a common plan for its commission with the actual

perpetrator(s)." Id. Simply put, "[a] conspiracy is not,

itself, a tort. It is the tort, and each tort, not the

conspiracy, that is actionable." Id. at 269. (quoting Segall v.

Hurwitz, 114 Wisc. 2d 471, 481, 339 N.W.2d 333, 338 (Wis. App.

1983)).

        Inasmuch as the plaintiff's defamation and false light

invasion of privacy claims against Trump, Jr. fail, so too does

his civil conspiracy claims premised on these underlying torts.

Indeed, in the absence of a viable claim for defamation or false

light invasion of privacy, the plaintiff's alleged conspiracy

claims against Trump, Jr. to commit the same, fail as a matter

of law. See Long v. M & M Transp., LLC, 44 F. Supp. 3d 636, 652

(N.D.W. Va. 2014) (concluding because there was no underlying tort to support the [plaintiff's] civil conspiracy claim" it failed as a matter of law.); see also Wittenberg v. Wells Fargo Bank, N.A., 852 F. Supp. 2d 731, 754 (N.D.W. Va. 2012) (concluding that, as "no viable tort claim remains in this action..., any claim of civil conspiracy fails as a matter of law.").

IV.   Conclusion

Based upon the foregoing, it is ORDERED that Donald Trump, Jr.'s motion for summary judgment, ECF 69, is GRANTED and plaintiff's motion to deny Donald Trump, Jr.'s motion for summary judgment, ECF 74, is DENIED.

The Clerk is directed to transmit copies of this order to all counsel of record and any unrepresented parties.

ENTER: March 30, 2023

John T. Copenhaver, Jr.
Senior United States District Judge